OF

## THE STATE OF IOWA,

AT

## DES MOINES, OCTOBER TERM, A. D. 1891,

AND IN THE FORTY-FIFTH YEAR OF THE STATE.

---

ANTON BYER, Appellant, v. MICHAEL HEALY *et al.*, Appellees.

| 84 | 1 |
|-----|-----|
| 111 | 174 |
| 84 | 1 |
| 138 | 353 |

1. **Judicial Sales:** REDEMPTION: JUNIOR LIENHOLDER: CLAIMANT AGAINST ESTATE OF DECEDENT. Conceding that a claim against the estate of a decedent duly approved and allowed as required by law gives to the claimant such a lien upon the real estate of the decedent as to entitle him to redeem from a judicial sale of real estate under the provisions of section 3104 of the Code, such a creditor will not acquire such right of redemption by the filing of his claim against the estate of the decedent and its allowance by the administrator without the approbation of the court, although a report of the administrator showing his allowance of such claim was approved by the clerk.

2. ———: ———: EQUITABLE ASSIGNMENT OF CERTIFICATE OF SALE: EVIDENCE. Where the holder of a sheriff's certificate of sale of real estate accepted money that had been paid to the clerk of the court to redeem from said sale, in the mistaken belief that the person attempting to redeem had a right to do so, and a sheriff's deed to the property was thereafter made to such redemptioner with the consent of the holder of the tax certificate, but, upon discovering his mistake the

next day, and before said redemptioner had been prejudiced by the mistake, the said certificate holder returned the redemption money to the clerk of the court, to be held by him without prejudice to either party pending the settlement of the question whether said redemptioner had a right to redeem, *held*, that there was not an equitable assignment of the sale certificate.

3. ——: ——: LACHES: ESTOPPEL. The holder of said certificate delayed making a tender of said redemption money back to said redemptioner for fourteen days after receiving the same from the clerk of the court, but the redemptioner knew that his right to redeem was being disputed, and was requested not to incumber the title pending an examination of that question by the attorneys for both parties. In the meantime, however, said redemptioner made a conveyance of the property to his sons, in consideration of love and affection, and the latter conveyed to one B. two days before the tender was made. *Held*, that the facts in relation to the defective title of said redemptioner being of record, as was also the fact that his right of redemption was disputed by the certificate holder, the latter was not estopped from disputing the former's title, nor could B. be deemed a purchaser without notice.

*Appeal from Webster District Court.*—HON. D. R. HINDMAN, Judge.

TUESDAY, OCTOBER 27, 1891.

ACTION in equity to set aside certain deeds of conveyance, and to require the defendant John Q. Adams, as sheriff, to execute a deed for the lands described to the plaintiff. A decree was entered dismissing the plaintiff's petition, from which he appeals.—*Reversed.*

*Frank Farrell*, for appellant.

*Healy & Healy* and *A. N. Botsford*, for appellees.

GIVEN, J.—Oscar Danielson died seised of the north half of the southeast quarter, and the southeast quarter of the southeast quarter of section 8, township 86, range 30, Webster county, subject to a mortgage which he had executed thereon to E. W. Marsh. December 16, 1887, the land was sold in two parcels, to Marsh, at foreclosure sale,—the north half for five

hundred and ninety-two dollars and sixty-seven cents and the southeast quarter of the southeast quarter for seven hundred dollars; and a sheriff's certificate was given to him. On December 17, 1887, Wright and Farrell, as attorneys for Marsh, assigned this certificate to the plaintiff, and on September 11, 1889, Marsh ratified the assignment in writing. September 8, 1888, Gardner, Batchelder & Co., by their agent, C. H. Reading, assigned their claim against the estate of Danielson, deceased, on account, for one dollar and fifty-eight cents, that had theretofore been filed, approved by the administrator, and entered by the clerk, to the defendant, M. Healy, which assignment said company afterwards ratified in writing. On September 8, 1888, M. Healy, claiming the right as assignee of said claim to redeem from the foreclosure sale, did on that day pay to the clerk the amount required to redeem said north half of the southeast quarter, of which the clerk made proper entries. On December 10, 1888, the plaintiff called upon the sheriff, produced the certificate as assigned to him by Wright and Farrell, as attorneys for Marsh, and demanded a deed. Upon being informed that Healy claimed the right to and had redeemed the eighty acres, and upon being told that Healy did have that right, the plaintiff consented to and did receive the redemption money from the clerk, consented that a sheriff's deed should be made to Healy, and arranged with the sheriff to have the deed for the forty executed, recorded, and sent to him. Believing, then, that Healy did have the right to redeem, he also entered into negotiations with him for the purchase of the eighty acres. Sheriff's deeds were executed, and the one delivered to Healy. On the next day the plaintiff, being advised that Healy did not have the right to redeem, returned the money to the clerk, and has ever since denied Healy's right to redeem.

The foregoing appear as the facts, with but little, if any, conflict. There is dispute as to whether Wright

and Farrell had authority to assign the certificate; whether Marsh signed the ratification, whether Reading had authority to assign the claim, and whether Gardner, Batchelder & Co. signed that ratification. We think it fairly established that both ratifications were signed as they purport, and that they show the authority of the agents to make the assignments they did. Michael Healy conveyed to Healy & Healy, and they to C. G. Blandon, by deeds signed December 22, acknowledged December 24, and filed for record December 24, 1888, at nine o'clock A. M.

I. The appellant's first contention is that M. Healy had no right to redeem, for the reason that it is not shown that Reading had authority to assign the claim to him, or that Gardner, Batchelder & Co. executed the writing ratifying the assignment, and for the further reason that the claim was not a lien upon the land. The testimony warrants the conclusion that Reading did have authority to assign the claim, and that by the assignment M. Healy became a creditor of the estate.

1. JUDICIAL sales: redemption: junior lien-holder: claimant against estate of decedent.

But the question remaining to be considered is whether the claim was a lien upon the land such as to entitle Healy to redeem, as provided in section 3104 of the Code, authorizing a creditor to redeem "whose claim becomes a lien," etc. This claim or account for one dollar and fifty-eight cents was presented to the administrator, and indorsed by him, "Examined and found to be correct this eighth day of November, 1886," and was entered in "probate index," showing "nature of claim, owner of, when filed, and amount;" but the columns, "Date of Al.," "Amt. of Al." and "Remarks," are blank. December 11, 1887, the administrator filed a report showing, among other things, his approval of this claim, which report was approved by the clerk. There is no other evidence of the approval or allowance of this claim. It was not allowed by the

clerk, as provided in section 2408 of the Code, when claims have been allowed by the administrator, nor does the administrator's admission of the claim in writing appear to have been "with the approbation of the court," as required by section 2410, and, therefore, under that section, "shall be considered as denied." Counsel have discussed with marked care and ability the question whether a claim approved and allowed as the law requires is a lien such as to entitle the owner of the claim to redeem under section 3104. This question we do not determine, for we think it very clear that this claim was never approved and allowed, as required. It has never been "expressly admitted in writing, signed by the executor, with the approbation of the court," and, therefore, "shall be considered as denied without any pleading on behalf of the estate." Though the court might approve a payment made by the administrator, upon his own approval, a claim is not established until it is approved by the court, by sanctioning the approval of the administrator, or by rendering judgment, as in cases of contest. This claim was clearly not so established as to become a lien, even if established claims may become liens. An order of court allowing a claim is conclusive, unless corrected on appeal or in some other direct proceeding. *Hart v. Jewett*, 11 Iowa, 276. This claim was not so approved, but stood denied and open to contest. The court might require further proofs. *Karr v. Stivers*, 34 Iowa, 123; *Riordan v. White*, 42 Iowa, 432; *Ordway v. Phelps*, 45 Iowa, 279.

II. The appellees contend that the facts show an equitable assignment of the certificate of purchase from the appellant to Michael Healy, and cite *Gilbert v. Husman*, 76 Iowa, 241, as directly in point. In that case, as in this, both parties acted upon a mistaken belief as to the right to make the redemption. In both cases the money was paid to the clerk by the party seeking to redeem, the

2. ——: ——: equitable assignment of certificate of sale: evidence.

redemption acquiesced in, and the money received by the other party. In that case, the holder of the certificate agreed to assign it, but did not do so because it was lost, and directed the money to be paid to the clerk, as was done, and, on receiving the money, left the certificate. Another very important difference in the facts is that the money was not returned to the clerk and tendered to the redemptioner when the mistake was discovered, as was done in this case the next day after the money was received. Parks might well be held to have made an equitable assignment of the certificate, so long as he continued to hold the money. It is clear that the appellant received the money, not because he was willing to sell the certificate to Healy, but under the mistaken belief that Healy had a right to redeem. On discovering his mistake the next day, and before Healy had been prejudiced by the mistake, or any new rights had attached, he did the only thing that was necessary to make Healy whole,—returned the money to the clerk. There was no tender made to Healy until December 24th, following, and he complains that that tender did not include interest from December 10th. It is evident that Healy knew the money had been returned to the clerk, and was subject to his order soon after it was returned. It would be an undue extension of the doctrine to say that the facts in this case show an equitable assignment of the certificate of purchase.

III. The appellees contend that the appellant "has by his conduct and laches disentitled himself to the relief asked, and especially as against the defendant Blandon." The conduct relied upon as constituting an estoppel is the delay in tendering back the money, and in not including interest for the time it was detained. The money was received by the appellant, December 10, 1888, and tendered back to M. Healy, December 24th, following. True, the appellant returned it to the clerk on the eleventh, to

3. ——: ——: laches: estoppel.

hold without prejudice to either party pending the settlement of the question whether M. Healy has a right to make the redemption, "which Mr. Byer disputes." This was not a return of the money to Healy, nor did he have notice of the deposit.   We are satisfied that M. Healy knew on the day the money was taken by the appellant, and soon after, that his right to redeem was disputed, and that he was requested not to incumber the title pending the examination that the attorneys for both parties were making.   An essential element of an estoppel is that the party pleading it has acted, or changed his position to his prejudice, in reliance upon the conduct of the other party.   *Tufts v. McClure,* 40 Iowa, 317.   On December 22, 1888, Michael Healy conveyed the land in controversy to his co-defendants, Healy & Healy, his sons, in consideration of love and affection.   They were his attorneys, and fully informed as to all the facts, and it is not questioned but that their title must stand or fall with that of their grantor. As to the defendants Healy, we think there was not such laches on the part of the appellant as to constitute an estoppel.   They knew when the deed was passed that the right to redeem rested upon a trifling claim of one dollar and fifty-eight cents; that it was questioned, and being examined; and that the appellant's attorney had requested that the title be not changed until the question was settled.

As we have seen, a deed was executed by Healy & Healy to C. G. Blandon, December 22, and acknowledged December 24, 1888, and filed for record at nine o'clock A. M. of the same day, which was prior to the time the money was tendered to M. Healy, and prior to the commencement of this action.   This deed was executed, acknowledged, and recorded at the same time as the deed from Michael Healy to Healy & Healy, and we are in no doubt but that C. G. Blandon took the deed to him knowing that it was based upon title in Michael Healy.   He also took it charged with what-

ever notice the records imparted as to that title. The records disclosed that Michael Healy's title rested upon his right to redeem, based upon a claim for one dollar and fifty-eight cents against the estate of Danielson, deceased, that had been allowed, but under the law stood as denied, and that the right of Michael Healy to make that redemption, and to receive the sheriff's deed, was denied, and the redemption money returned to the clerk. In short, the record disclosed the very facts upon which we hold that, as to the plaintiff Byer, the deed to Michael Healy, and from him to Healy & Healy, are void. With such knowledge and notice it cannot be said that C. G. Blandon was an innocent purchaser without notice of the nature of Michael Healy's title, or that the appellant is now estopped from questioning that title as against Blandon.

The decree of the district court should be reversed, and a decree entered for the plaintiff as asked in his petition, and for the return of the money in the hands of the clerk to Michael Healy, and judgment against all the defendants except John Q. Adams, sheriff, for costs. REVERSED.