[S. F. No. 2337. Department Two.—January 26, 1903.]

FLORA D. JONES, Executrix of the Will of M. P. Jones, Deceased, Respondent, v. C. T. SANDERS, Appellant.

PRIVATE SEWER—EASEMENT—DEVISE OF LOTS—SUBJECTION TO BURDEN.
—An owner of three lots who constructed a private sewer from his dwelling upon one of them across the other two lots to a street sewer had a *quasi* easement for the sewer on the other two lots for the benefit of the residence lot; and upon severance thereof by a

devise of the other two lots to his widow, she took with the burden imposed upon them by her devisor, and an easement in them for the benefit of the dwelling-house lot was thereby created.

ID.—TRANSFER OF LOTS—EASEMENT OF TWO LOTS UPON THIRD.—Where the plaintiff acquired the residence lot, and the devisee of the other two lots sold them to a third party, who sold the intervening lot to the plaintiff, and expressly granted him a perpetual easement over the remaining lot for the sewer to the street, and afterwards sold that lot to the defendant, both lots of the plaintiff have an easement for the sewer in the lot of the defendant.

ID.—TITLE HELD AS SECURITY—GRANT OF EASEMENT.—Where the purchaser of the two lots from the devisee had the title placed in third parties as security for money loaned for the purchase of the lots, under the understanding that he was to have full power to sell the lots, the transaction is to be regarded as a mortgage as between the parties; but where, upon a sale of the intervening lot to the plaintiff by the mortgagor, a conveyance thereof was joined in both by him and by such third parties, such conveyance operated to pass all easements attached thereto, and to grant an easement for the sewer in the remaining lot then owned by the mortgagor.

ID.—SPECIAL GRANT OF EASEMENT—KNOWLEDGE.—The special grant of the easement by the mortgagor, whether essential to its creation or not, shows his knowledge of its existence when the lot was conveyed, and as he was the owner with unconditional authority to sell, it is immaterial whether the mortgagees or trustees had knowledge of its existence or not.

ID.—ACTION FOR DAMAGES—PLEADING—CONCLUSION OF LAW—FINDINGS. —In an action to recover damages for interference by defendant with plaintiff's easement for the sewer, where the complaint alleges that the sale of land to the defendant was expressly made and agreed to be subject to the agreement in writing made by defendant's vendor with plaintiff, and to the rights of plaintiff under the same, which allegation is denied, a succeeding averment of the answer that, "on the contrary," such vendor never had any right, title, or interest in any of the lots referred to, and had no right or authority to make such agreement, is of a mere conclusion of law, which raises no material issue and requires no finding.

ID.—ASSESSMENT OF DAMAGES—PROVINCE OF COURT—EXEMPLARY DAMAGES.—The destruction of the sewer and the refusal of the defendant to permit its reconstruction and maintenance upon his lot, which it appears could be done without injury to the lot or building erected thereupon, conclusively shows that plaintiff sustained damages, which it was the province of the court, sitting as a jury, to assess; and where the case is such as to warrant exemplary damages, the assessment of damages will not be disturbed upon appeal.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. J. M. Seawell, Judge.

The facts are stated in the opinion.

Fisher Ames, Rodgers, Paterson & Slack, and Charles W. Slack, for Appellant.

The legal title passed under the deed of trust to Boyd and Davis. (*Campbell* v. *Freeman,* 99 Cal. 546; *Koch* v. *Briggs,* 14 Cal. 257;[1] *Fuquay* v. *Stickney,* 41 Cal. 583; *Tyler* v. *Granger,* 48 Cal. 259; *Grant* v. *Burr,* 54 Cal. 298; *Bateman* v. *Burr,* 57 Cal. 480, 483; *Savings and Loan Society* v. *Deering,* 66 Cal. 281; *Partridge* v. *Shepard,* 71 Cal. 470; *More* v. *Calkins,* 95 Cal. 435.;[2] *Savings and Loan Society* v. *Burnett,* 106 Cal. 514; *Sacramento Bank* v. *Alcorn,* 121 Cal. 379.) It is well settled that a mortgagor or trustor, or one claiming under him, cannot, by his own act, create an easement in the land subject to the mortgage or deed of trust, as against, or to the prejudice of, the mortgagee or trustee, or one claiming under him. (Jones on Easements, sec. 135; 1 Jones on Mortgages, 5th ed., sec. 676; *Murphy* v. *Welch,* 128 Mass. 489; *Hoole* v. *Attorney-General,* 22 Ala. 190; *People* v. *Herbel,* 96 Ill. 384; *McShane* v. *City of Moberly,* 79 Mo. 41.) A servitude can only be created by one who has a vested interest in the servient tenement. (Civ. Code, sec. 804; *Gridley* v. *Hopkins,* 84 Ill. 528; Jones on Easements, sec. 81; *Pfeiffer* v. *Regents of University of California,* 74 Cal. 156, 162; *Rangeley* v. *Midland Ry. Co.,* L. R. 3. Ch. App. 306.) The damages are excessive. The case is not one for exemplary damages. (1 Sutherland on Damages, 2d ed., p. 847; 1 Sedgwick on Damages, 8th ed., sec. 383; *Abbott* v. *76 Land and Water Co.,* 103 Cal. 607; *Allison* v. *Chandler,* 11 Mich. 542; *Waldron* v. *Marcier,* 82 Ill. 550; *Inman* v. *Ball,* 65 Iowa, 543.)

Lloyd & Wood, for Respondent.

The appellant having taken his title expressly subject to the grant of the easement made to the respondent, he is estopped to question the right of respondent to maintain the sewer. (*Parker* v. *Nightingale,* 6 Allen, 341;[3] *Los Angeles T. L. Co.,* v. *Muir,* 136 Cal. 36.) The title being held as

[1] 73 Am. Dec. 651.                    [3] 83 Am. Dec. 632.
[2] 29 Am. St. Rep. 128.

security for Magee's note, Boyd and Davis had only in effect a lien upon the premises. (*Brandt* v. *Thompson,* 91 Cal. 458; *Smith* v. *Smith,* 80 Cal. 323; *Locke* v. *Moulton,* 96 Cal. 21; *Wenzel* v. *Schultz,* 100 Cal. 250; *Byrne* v. *Hudson,* 127 Cal. 256; *Sacramento Bank* v. *Alcorn,* 121 Cal. 379; *Herbert Craft Co.* v. *Bryan* (Cal.), 68 Pac Rep. 1020.) The doctrine of *Nicholas* v. *Chamberlain,* Croke, 121, as to appurtenances is recognized and followed by this court. (*Cave* v. *Crafts,* 53 Cal. 135, 139; *Farmer* v. *Ukiah Water Co.,* 56 Cal. 12; *Dixon* v. *Shermeier,* 110 Cal. 582; *Clyne* v. *Benicia Water Co.,* 100 Cal. 310; *Crooker* v. *Benton,* 93 Cal. 365; *Fitzell* v. *Leaky,* 72 Cal. 477, 480; *Ely* v. *Ferguson,* 91 Cal. 187; *Mc-Shane* v. *Carter,* 80 Cal. 310.) The right to the sewer as an appurtenance and an easement upon the Jones-Street lot passed by the deed from Boyd and Davis and Magee. (*Coonradt* v. *Hill,* 79 Cal. 587, 590; *Standart* v. *Round Valley W. Co.,* 77 Cal. 399; *Lower Kings River Water Ditch Co.* v. *Kings River and Fresno Land Co.,* 60 Cal. 408; *Quinlan* v. *Noble,* 75 Cal. 250, 252; *United States* v. *Appleton,* 1 Sum. 492.)

HAYNES, C.—This action was commenced by M. P. Jones, who died pending the action, and his executrix was substituted; but for convenience he will be referred to herein as plaintiff, as though still living. The action was brought for an injunction and to recover damages from the defendant for destroying a private sewer alleged to be appurtenant to plaintiff's property. The court found in favor of the plaintiff, granting a perpetual injunction, and gave judgment for three thousand dollars damages. That portion of the judgment granting an injunction was afterwards eliminated, with the consent of the plaintiff, and this appeal is from the judgment awarding damages and from the order denying defendant's motion for a new trial.

Plaintiff is the owner of two certain lots, in the city of San Francisco, fronting on the south line of Pine Street, the easterly lot having for its side-line the west line of Jones Street, the other lot being separated from it by a narrow street or alley, known as Touchard Street, which extends south from Pine Street and terminates at the rear end-lines of plaintiff's lots.

Defendant is the owner of a lot fronting on the west side

of Jones Street, the northerly side-line of which formed the
south end-line of plaintiff's lots.

Upon one of plaintiff's lots is a dwelling-house, in which he
resides, and on the other is a stable and carriage-house, used
by plaintiff. Some eight or nine years prior to September,
1889, (the date of defendant's purchase,) all these lots were
owned by one Cook, who constructed a sewer from the dwell-
ing-house on the westerly lot of the two fronting on Pine
Street, and which passed under the stable upon the other
Pine-Street lot and continued across the Jones-Street lot (now
owned by defendant), and connected with the public sewer
on Jones Street, said Pine-Street lots being too low to con-
nect with the sewer on Pine Street. After the construction
of the sewer plaintiff became the owner of the lot on which
is the dwelling-house and the stable lot, and the Jones-Street
lot became the property of one Mrs. Martin, and she con-
tracted to sell them to one Thomas Magee for the sum of
$45,000. To enable him to pay for said property, Magee
borrowed from Boyd and Davis $35,000, and gave his prom-
issory note therefor, and entered into a written contract with
them by which the conveyance from Mrs. Martin should be
made to them as security for said loan, that Magee might
sell any or all of said lots, the purchase money to be paid to
them and credited upon said note until it should be fully
paid, they to convey to the purchasers, and that, in case of
foreclosure, Magee was also to pay a reasonable attorney's
fee. Magee paid for the property, and the deed therefor was
made to Boyd and Davis.

Magee, in April, 1888, sold the Pine-Street lot to plaintiff,
and joined with Boyd and Davis in the conveyance, and at
the same time, in a separate instrument, Magee granted to
the plaintiff an easement upon the Jones-Street lot for the
perpetual maintenance of the sewer across the same, and in
February, 1889, he sold the Jones-Street lot to the defendant,
and joined with Boyd and Davis in the conveyance. De-
fendant's purchase, as the court found, was with full notice
and knowledge of the sewer and of the grant of the easement.

In September, 1889, the defendant, in excavating for the
foundation of a building upon said lot, encountered said
sewer, and cut it off where it entered his lot and at several
other places.

Said grant of the easement by Magee to the plaintiff, however, provided: "But it is expressly understood and agreed that said sewer shall be at all times placed sufficiently below the surface of said premises so that the same shall in no way interfere with or obstruct the basement story of any building now or hereafter to be built in or upon said lot of land on Jones Street, provided the free flow through said sewer shall not be impeded or interrupted"; and touching this provision, the court found that the sewer, as it had been constructed, would interfere with the basement of the building intended to be erected by the defendant, but that the plans of the building might have been prepared and the building so constructed that the sewer would not have interfered with the basement story, or that the sewer could have been so depressed as not to interfere therewith or the flow through the sewer impeded, and that the direcion of the sewer could have been changed so as to pass around the building without injury to the defendant's premises or the sewer, but that the defendant at all times refused to permit the depression or change of direction to be made, or any sewer to be maintained upon his premises, and assessed plaintiff's damages at the sum of three thousand dollars.

Appellant's contentions are,—1. That the amended complaint does not state facts sufficient to constitute a cause of action; 2. That the court failed to find upon a material issue; and 3. That the evidence is insufficient to show that the plaintiff sustained damage in the sum of three thousand dollars.

1. Appellant's argument in support of his first contention is, in substance, that as the legal title to the lots purchased by Magee from Mrs. Martin was vested in Boyd and Davis, Magee could not create an easement to their prejudice, or to the prejudice of the defendant who claims under them.

We think, with appellant, that it is not a matter of importance whether the transaction between Magee and Boyd and Davis be held to be a trust or a mortgage. As between themselves, it was a mere security, and therefore a mortgage; and as to the direction to convey to purchasers it would seem to be a trust, though that power was in aid of the security. In either case, however, Magee was the owner, with possession and the sole right to sell, use, and control the property, with the limitation that it must not be so used as to materially im-

pair the security of Boyd and Davis, who had no other interest therein.

At the time of the sale by Magee to the plaintiff, the sewer was an incident or appurtenance to the lot then sold (as well as to the lot upon which he then lived), and by that sale and conveyance an easement was granted to him in the Jones-Street lot, then owned by Magee, through which the sewer was laid. "The transfer of a thing transfers also all its incidents, unless expressly excepted," (Civ. Code, sec. 1084); and section 1104 of the same code provides: "A transfer of real property passes all easements attached thereto, and creates in favor thereof an easement to use other real property of the person whose estate is transferred in the same manner and to the same extent as such property was obviously and permanently used by the person whose estate is transferred, for the benefit thereof, at the time when the transfer was agreed upon or completed."

It will be noticed that a transfer not only passes an easement then existing, but *creates an easement* in other property of the grantor under the circumstances there specified. I do not understand that appellant questions that the deed executed by Boyd and Davis and Magee conveyed the entire and unencumbered title in the Pine-Street lot to plaintiff, whatever the technical legal relation of Boyd and Davis to the property or to Magee may be styled; and therefore the cases of *Murphy* v. *Welch,* 128 Mass. 489; *People* v. *Herbel,* 96 Ill. 384, and other cases of that class cited by appellant, where it was held that a mortgagor could not create or grant an easement in the mortgaged property, are not relevant. In both of said cases the mortgagee was given a power of sale, and did not join in the grant; and doubtless the same rule would be adopted in cases where the mortgage vested a conditional title in the mortgagee, or where it injuriously affected his security. There can be no question that if Magee, after the sale of the Pine-Street lot to the plaintiff, had paid his debt to Boyd and Davis and retained the Jones-Street lot now owned by defendant, he would have held it charged with the easement, even though he had not executed the written grant thereof to the plaintiff, and, if so, a purchaser from him with notice of the easement would hold it charged therewith.

The Civil Code (sec. 1104) uses the expression, "obviously

and permanently used,'' and appellant contends that it is necessary that the *quasi* easement should either be apparent or that the grantor as well as the grantee should know of its existence, in order that it may pass as an easement by implication (citing *Hyde Park etc. Co.* v. *Brown,* 172 Ill. 329, and other cases). But in this case the execution by Magee of the grant of the easement, whether essential to its creation or not, furnishes satisfactory evidence that the grantor, Magee, had knowledge of the existence of the *quasi* easement at the time he conveyed the lot to the plaintiff; and as he was the owner, with an unconditional authority to sell, it is immaterial whether Boyd and Davis had knowledge of its existence or not.

Appellant further contends that if plaintiff had any easement in appellant's lot it was only for the benefit of the stable lot (the one sold by Magee to the plaintiff), and not for the benefit of the lot upon which plaintiff resided. The complaint alleged an easement for the benefit of both lots. Mr. Ackerson testified that he knew the sewer referred to, ''which runs from the plaintiff's residence through both the other lots'' into the sewer on Jones Street; that he constructed the sewers from the stables across defendant's lots into Jones Street about eleven years ago for Mr. Cook, who then owned all the property. Mr. Cook died in 1882. By his will he devised the stable lot and defendant's lot to his widow, who afterwards married Mr. Martin, and who conveyed to Boyd and Davis the lots she sold to Magee. When Mr. Cook constructed the sewer, being then the owner of all three of the lots, he had a *quasi* easement on the other two lots for the benefit of the residence lot, on which was the head of the sewer, and when it was severed from the other two by the devise of them to Mrs. Martin she took with the burden imposed upon them by her devisor, and an easement in them for the benefit of the lot upon which was the dwelling-house was thereby created, and when the stable lot was sold to Magee, and by him to the plaintiff, both of the Pine-Street lots had an easement in the Jones-Street lot now owned by defendant. Appellant's first point cannot be sustained.

2. Appellant also contends that the court failed to find upon a material issue. The complaint alleged ''that the sale of said land to the defendant by said Thomas Magee was expressly made and agreed to be subject to the said agree-

ment in writing and to the rights of the plaintiff under the same" (referring to the agreement with plaintiff in regard to said easement). The defendant denied this allegation, and added that, "on the contrary," Magee never had any right, title, or interest in any of the lots referred to, and had no right or authority to make the agreement referred to.

The matter stated affirmatively, prefaced by the words "on the contrary," was a conclusion of law merely, and not an allegation of any *fact* which was inconsistent with the facts alleged in the complaint. If it be treated as an allegation of fact, the form of a replication thereto would be that "Magee had such right, title, and interest in said lots as authorized him to make said agreement," which is a pure conclusion of law, and in effect a demurrer to the allegations of the complaint to which it refers.

3. Lastly, it is contended that "the evidence is insufficient to justify the finding that the plaintiff has sustained damage in the sum of three thousand dollars, but, on the contrary, shows that plaintiff has sustained no damage whatever."

The destruction of the sewer, and the defendant's positive refusal to permit its reconstruction and maintenance upon his lot, which the court found could be done without injury to the lot or building, conclusively shows that plaintiff sustained damage. As to the amount, some additional facts should be noticed. The judgment as rendered affirmed the right of the plaintiff to perpetually maintain a sewer through defendant's lot, with the right to enter upon it for its construction and repair, and enjoining the defendant from interfering therewith, and also gave judgment for three thousand dollars damages. Upon the hearing of the motion for new trial, the court below announced that it would grant a new trial unless the plaintiff would release all right to keep or maintain a sewer in or over the lot of defendant, as specified in the judgment. Plaintiff, within the time limited therefor, executed and filed such release, and thereupon the court denied the motion of defendant for a new trial, leaving the judgment for damages to stand.

It was the province of the court, sitting without a jury, to assess the damages sustained by the plaintiff, and it is clear that the court below gave this question further careful consideration upon the hearing of the motion for a new trial.

That the plaintiff sustained actual damage is beyond doubt, and we are unable to say that the amount awarded exceeded the actual damage sustained. But however that may be, we think it was a proper case for exemplary damages. Defendant purchased with full knowledge of the easement and of plaintiff's right to maintain it. Notwithstanding the fact that the sewer could have been changed so as not to interfere with his building or injure his lot, he refused to give permission to reconstruct or maintain it anywhere upon his lot, declaring it was a fight, and he would fight it out, thus evincing a determination to permanently deprive the plaintiff of his property in the easement, thereby diminishing the value of his lots to which it was an appurtenance. Appellant contends that in cutting the drain he supposed he had a right to do so, and was justified in doing what he did. We do not see how it was possible for him to come to such conclusion. Having purchased with knowledge of the existence of the easement, and of the plaintiff's legal title thereto, his refusal to permit its existence not only inflicted a direct and serious injury upon plaintiff's property, to which it was appurtenant, and being, as the court found, oppressive and malicious, and therefore within the provisions of section 3294 of the Civil Code, justified an award of exemplary damages. For an extended discussion of this subject of "aggravation of damages to property," see Mr. Freeman's note to *Merrills* v. *Tariff Mfg. Co.,* 27 Am. Dec. 684 et seq.

I advise that the judgment and orded appealed from be affirmed.

Cooper, C., and Chipman, C., concurred.

For the reasons given in the foregoing opinion the judgment and order appealed from are affirmed.

McFarland, J., Lorigan, J., Henshaw, J.

Hearing in Bank denied.