[Civ. No. 546.  First Appellate District.—April 15, 1909.]

## O. OLIVER, Appellant, v. ROBERT B. BURNETT, Respondent.

EASEMENTS—EFFECT OF TRANSFER OF PROPERTY WITH EASEMENTS ATTACHED.—A transfer of real property passes all easements attached thereto, and creates in favor thereof an easement to use other real property of the person whose estate is transferred in the same manner and to the same extent to which such property was obviously and permanently used by the person whose estate is transferred, for the benefit thereof at the time when the transfer was agreed upon or completed.

ID.—EFFECT OF PARTITION—EASEMENT FOR IRRIGATING DITCH NOT SHOWN—SUPPORT OF FINDING FOR DEFENDANT.—Conceding that an action for partition, and a decree establishing the same between tenants in common has the same effect as a deed would have had between the parties, yet where the evidence shows that no easement then existed for a right of way for an irrigating ditch in favor of the plaintiff over the land of the defendant, or was raised by the partition proceedings, a finding for the defendant against the existence of such easement must be sustained.

ID.—ENTIRE TRACT HELD IN ONE OWNERSHIP.—So long as the entire tract was held in one ownership there could be no such thing as a

dominant and servient tenement between the different portions of the tract. During such ownership the owner may rearrange the quality of any possible servitudes.

ID.—SERVITUDES CREATED BY GRANT—BENEFITS OR BURDENS.—Servitudes created by grant or transfer must correspond to the benefits or burdens existing at the time of the transfer.

ID.—ORAL AGREEMENT PRIOR TO PARTITION FOR RIGHT OF WAY—STATUTE OF FRAUDS.—An oral agreement between parties to the partition prior thereto, not carried into the decree, that the one to whom the middle piece was to be allotted should allow a ditch to extend across it for the benefit of the one who took the western piece, concerned an estate in real property and was void under the statute of frauds.

ID.—ADVERSE USER AFTER PARTITION.—An adverse user of the irrigating ditch for one year only can confer no title to an easement; and the use by the owner of the middle tract for his own benefit, while lessee of the tract claimed by plaintiff, of water over his own land for his benefit as such lessee, being by consent of the middle owner, could not constitute adverse user.

APPEAL from an order of the Superior Court of Fresno County, denying a new trial. H. Z. Austin, Judge.

The facts are stated in the opinion of the court.

Everts & Ewing, for Appellant.

M. K. Harris, for Respondent.

HALL, J.—Plaintiff and defendant are owners of adjoining tracts of land situate in Fresno county. As appurtenant to his land, plaintiff claims to have a right of way across the land of defendant for the purpose of maintaining a ditch to carry water from the main ditch of the Fresno Canal and Irrigation Company to the lands of plaintiff for irrigating purposes, and brought this action to obtain a judgment establishing such right, and restraining defendant from interfering with plaintiff in repairing said ditch. Defendant denied the right of plaintiff, and by a cross-complaint sought damages caused by plaintiff to the land of defendant in repairing said ditch.

The court found that plaintiff was not the owner of any such right of way across the land of defendant, and accordingly gave judgment that plaintiff take nothing by his action,

and that defendant recover damages on his cross-complaint in the sum of one dollar.

Plaintiff moved for a new trial, which was denied, and thereupon appealed to this court from the order denying his said motion.

Plaintiff's contention is that the evidence does not support the findings of the court to the effect that plaintiff was not the owner of any right of way for ditch purposes across the land of defendant.

Both the lands of plaintiff and of defendant at one time were a part of a larger piece belonging to one William C. Caldwell. After his death the entire piece (which we will hereafter designate as the Caldwell tract) was, together with other property, distributed in undivided parts—one-half to his widow, Paulina Caldwell, and one-half to his five minor children. This decree of distribution bears date March 26, 1877. The widow, Paulina Caldwell, died in 1887, and in 1891, as the result of a partition suit brought by the administrator of her estate, D. P. Blevens, against the other distributees of the estate of William C. Caldwell, or their successors in interest, the Caldwell tract was divided into three equal parts, and the western portion awarded in severalty to Margaret J. Caldwell Graff; the middle portion to Emily Caldwell Blevens, and the eastern portion to Laura Caldwell Ellis. The decree is dated April 7, 1891. The western portion was conveyed by Margaret J. Graff and her husband to plaintiff (Oliver) January 20, 1903. The middle portion was conveyed by Emily Caldwell Blevens and her husband to John M. Allison March 5, 1897, and by him and wife to George M. Rock and wife October 27, 1900, and by them to defendant (Burnett) January 29, 1904. The eastern portion, by mesne conveyances from Laura Caldwell Ellis, has been vested in Jane Young.

At some time long prior to the partition suit above mentioned, and when the Caldwell tract was held by one owner or by several as tenants in common, a right to free water for irrigating said tract was acquired from the Fresno Canal and Irrigation Company.

The decree in partition makes no mention of this water right, or any right of way for a ditch or for any purpose over the middle or Burnett piece for the western or Oliver piece.

Plaintiff, however, contends, as we understand him, that the evidence shows without conflict:

1st.   That at the time of the partition of the Caldwell tract, and for a long time prior thereto, water had been conveyed in a ditch across the middle or Burnett piece for irrigating the western or Oliver piece, and that in consequence thereof the right to such ditch for such purpose passed under the decree of distribution with the western or Oliver piece as an easement appurtenant thereto;

2d.   That it was agreed by parol by Mrs. Blevens that Margaret J. Caldwell Graff should have a ditch right across the middle piece for the benefit of the western piece as consideration for her consenting that the middle piece be awarded to Mrs. Blevens; and

3d.   That a ditch right across the middle or Burnett piece, for the benefit of the western or Oliver piece, has been acquired by adverse user.

1. Undoubtedly it is the law that ''A transfer of real property passes all easements attached thereto, and creates in favor thereof an easement to use other real property of the person whose estate is transferred in the same manner and to the same extent as such property was obviously and permanently used by the person whose estate is transferred, for the benefit thereof, at the time when the transfer was agreed upon or completed.'' (Civ. Code, sec. 1104; *Pogue* v. *Collins,* 146 Cal. 435, [80 Pac. 623]; *Pendola* v. *Ramm,* 138 Cal. 517, [71 Pac. 624]; *Jones* v. *Sanders,* 138 Cal. 405, [71 Pac. 506].)   And it may be conceded for the purposes of this discussion that the proceedings and decree in partition had the same effect, as between Mrs. Blevens and Mrs. Graff, who took under said decree the middle or Burnett and the western or Oliver piece of the Caldwell tract respectively, as a deed would have had.

But unfortunately for appellant it cannot be said that the evidence shows without conflict, or at all for that matter, that any such state of facts existed as would, between a grantor and grantee, raise an easement or ditch right over the middle or Burnett piece in favor of the western or Oliver piece.

The evidence shows that during the lifetime of Mrs. Paulina Caldwell she rented the entire Caldwell tract to some Chinese, who in 1884 and 1885 took water out of the canal of the Fresno Canal and Irrigation Company on to the Caldwell

tract for irrigating the same.  By plowing furrows they made
a ditch over the most natural grade, through which they ran
water for those two years across what are now the Young
and Burnett pieces on to what is now the Oliver piece for irri-
gation purposes.  At this time, however, the entire Caldwell
tract was held in one ownership, and so continued until the
partition in 1891.  There is abundant evidence in the record
that no water was run over the Burnett piece for irrigating
any portion of the Oliver piece after 1885 until after the parti-
tion in 1891.

Chas. F. Ellis, a witness for plaintiff, testified to the fact
that the Chinese ran water across the Burnett piece in 1884
and 1885; Ellis was a son in law of Mrs. Caldwell, and his
wife got the eastern piece in the partition in 1891.  He
rented the Caldwell tract from Blevens, the administrator of
Mrs. Caldwell's estate in 1888.  He testified that in 1889
water ran through the ditch on the Burnett piece on to the
Oliver piece, but not to irrigate it.  The water ran through
on to the Caldwell piece, and formed a pond, and drowned
out some barley.  This testimony only showed the use of the
ditch for the benefit of the Oliver piece in 1884 and 1885.  Al-
though he also testified that water ran through the ditch to
the Oliver piece in 1889, it was not for irrigating such piece
or for its benefit, but was accidental and unintentional, and
to the injury of the Oliver piece, which he then had planted
to grain.  He said: "This was in 1889.  It run through sev-
eral times.  It frequently broke over me—too much water
in the ditch, and it came through before it would be noticed."

We can find nothing in the record tending to show that any
water ran across the Burnett piece to the Oliver piece prior to
the partition of the Caldwell tract, save during the years
1884 and 1885, when it was used for the benefit of the Oliver
piece, and in 1889, when it ran on to the Oliver piece through
accident and to its injury and was in no sense used for its
benefit.

On the other hand, D. P. Blevens, the son in law of Mrs.
Caldwell and administrator of her estate and husband of
Mrs. Blevens, who took the middle or Burnett piece under
the partition decree, testified that he had been familiar with
the Caldwell tract since 1876.  He testified that the ditch
made by the Chinese was annihilated by plowing.  "From
1885 for the next five or six years this ground was put in

grain and cultivated with gangplows, and they ran harrows over it, and you could not tell where the ditch was. Charlie Ellis plowed it two years himself. The ditch had been annihilated.'' He further testified that he made a new ditch, but never ran the water beyond the house. ''I never in my time ran the water beyond the house.'' (The house was near the middle of the Burnett piece, and the ditch entered the Caldwell tract at the eastern boundary thereof. The Oliver piece is the western portion of the Caldwell tract.) Blevens made his ditch in 1890, and used it until his wife sold the Burnett piece to Allison in 1897, but never ran water through it for the purpose of irrigating the Oliver piece. He never ran the water beyond the house, which would be near the middle of the Burnett piece, and would not reach the Oliver piece at all.

It is thus clear that at the time of the partition no ditch across the middle or Burnett piece was obviously, permanently or at all used to convey water to the western or Oliver piece, for its benefit or at all, nor had any such ditch been so used at any time since 1885, which was six years prior to the partition. This ditch had long since been abandoned and annihilated, and no other since constructed to carry water to the Oliver piece, nor had any water been in any way since 1885 taken across the Burnett piece for the benefit of the Oliver piece. So long as the entire Caldwell tract remained in one ownership there could be no such thing as a dominant and servient tenement between different portions of the tract. During such ownership the owner may rearrange the quality of any possible servitudes. The servitudes created by a grant or transfer must correspond to the benefits or burdens existing at the time of the transfer. (*Quinlan* v. *Noble,* 75 Cal. 250, [17 Pac. 69] ; *Cave* v. *Crafts,* 53 Cal. 139.)

The contention of appellant that a ditch right across the Burnett piece passed to the Oliver piece, as appurtenant thereto under the decree in partition, cannot be sustained.

2. There is some evidence, given by the witness Ellis, to the effect that it was agreed between Mrs. Blevens and Mrs. Graff, that Mrs. Graff should have a ditch across the middle piece for the benefit of the western piece, in consideration that she, Mrs. Graff, should allow Mrs. Blevens to take the middle piece. If it be conceded that this evidence was not contradicted, it was not in writing, nor carried into the decree

of partition. That such an agreement concerns an estate in real property and is within the statute of frauds may not be gainsaid. (*Hayes* v. *Fine,* 91 Cal. 391, [27 Pac. 772].) We have been pointed to nothing in the evidence to take the alleged parol agreement, under the rules of equity, out of the operation of the statute of frauds.

3. The claim of adverse user must, of course, be predicated on user after the severance of the tenancy in common. We find in the record no evidence of any adverse user save possibly during the year 1903. Mr. and Mrs. Blevens were in possession of the middle piece from the date of the partition till she sold to Allison in 1897. Blevens testified that during that time not a drop of water ran through the ditch for the purpose of running water on to the Oliver place.

While Allison owned the middle or Burnett tract in 1899 and 1900, he ran water through the Burnett piece on to the western or Oliver piece, of which he was then lessee, to irrigate some nursery stock that he had thereon. He also permitted Mr. Atkinson, a subtenant of his, of part of the Oliver place, to use water from the ditch to irrigate his holdings. Subsequently Mr. Rock, the grantee of Allison of the Burnett place, ran water through the Burnett piece to irrigate the nursery stock which had also been sold to him. It is perfectly apparent that none of these acts amounted to an adverse user. They were by and with the consent of the then owners of the Burnett piece, and for the use and benefit of such owners.

The only evidence that can plausibly be said to show an adverse user relates to a use during the season of 1903. It is very doubtful if this was in fact adverse; but if it be conceded that it was, it was for but one year, and is, of course, insufficient to establish an easement by adverse use.

Appellant calls our attention to some rulings upon objections to the admission of testimony. We find no error in any of these rulings, and none of them are of sufficient importance to require discussion.

The order is affirmed.

Cooper, P. J., and Kerrigan, J., concurred.