[Civ. No. 3192. Fourth Dist. Mar. 4, 1946.]

JOHN H. EDGAR et al., Appellants, v. JAMES HENRY PENSINGER et al., Respondents.

Siemon, Maas & Catalano and Siemon, Maas & Siemon for Appellants.

Harvey, Johnston, Baker & Palmer for Respondents.

BARNARD, P. J.—This is an action for an injunction and to establish certain easements.

The Kern County Land Company diverted water from Kern River, built some canals and subdivided and sold large tracts of land with water rights. It subdivided the half section part which is here involved into sixteen 20-acre tracts, eight on the north and eight on the south of the middle line of the half section. The north lots were numbered consecutively from one on the east to eight on the west, and the south lots consecutively from nine on the west to sixteen on the east, so that lot 16 is the E ½ of the SE ¼ of the NE ¼ of the section. In 1911, the land company deeded lots 13, 14, 15 and 16, sub-

ject to certain reservations which will be later referred to, to W. W. Pensinger and several others. Between 1911 and 1915 these others deeded their interests to W. W. Pensinger, with no reservations appearing in the deeds. In May, 1931, W. W. Pensinger deeded the middle nine acres of lot 16 to the defendant James Henry Pensinger. In June, 1931, he deeded the south five acres of lot 16 to the plaintiff Ruby Edgar and in April, 1932, he deeded the north six acres of lot 16 to plaintiff John H. Edgar, neither of these deeds containing any reservations. For convenience, these three parcels will be referred to as the north parcel of lot 16, the middle parcel of lot 16 and the south parcel of lot 16.

The plaintiffs subsequently acquired lots 15, 14, 13, 12, 10, 7 and 5, the defendant Pensinger acquired lots 6 and 11, and the defendant Pitt acquired lot 9. The plaintiffs also own the south half of lots 1, 2 and 3, where their home is situated.

The 1911 deed from the land company to W. W. Pensinger and others contained the following reservations:

"Excepting and reserving therefrom all existing easements, servitudes and rights of way for canals, ditches, roads, highways, telegraph lines, railroads and other purposes.

"The land above described is granted subject to any charge created against it by the contract of settlement of water rights made between Henry Miller and others and James B. Haggin and others, under date of July 28th, 1888, and recorded in the office of the County Recorder of said County of Kern. The party of the first part reserves to itself and its successors and assigns the right of way over and upon said land for the construction and maintenance of such ditches, canals, pipes and aqueducts as may, in the judgment of the party of the first part, its successors or assigns, be necessary or proper for supplying water to any lands described in said contract between Miller and others, and Haggin and others, to which, for a description of said lands, reference is hereby made."

At that time, and ever since, the canal supplying water to the southern and western lots in this subdivision has crossed the south parcel of lot 16, and a headgate has been located thereon. Since that time, as well as long before, the main ditch has run from this headgate in a westerly and northwesterly direction across the south parcel of lot 16, across lots 15, 14 and 13, and thence north and west across lot 12 to the common corner of lots 5, 6, 11 and 12. From that point it

runs north near the westerly line of lot 5 to a point about 400 feet south of the northwest corner of lot 5, thence west to the west line of lot 6, thence southerly through lots 6 and 7 to a point near the southeast corner of lot 7. From that point it proceeds on west over a course that has been established by a previous judgment. At that time there was also another ditch running from this headgate northerly through the south parcel of lot 16, across the middle parcel of lot 16, and to a point about midway between the north and south lines of the north parcel of lot 16.

It appears from the evidence that the first of these ditches, which we will call the South ditch, has been continuously used by both plaintiffs and defendants to water lands in this subdivision for forty years. The second ditch above described, which we will call the East ditch, existed from 1907 or 1908, and there is evidence of its use between 1924 and 1936 for the purpose of irrigating the middle and north parcels of lot 16 and a few acres at the northern end of lots 15 and 14, with a little at the northeast corner of lot 13. However, the north parcel of lot 16 has been irrigated mostly with pump water since 1929. There is evidence that the plaintiffs, after acquiring lots 13, 14 and 15, rebuilt an old ditch running east and west and constructed extensions thereto so that there is now a ditch running west from the north end of the old East ditch, through the north parcel of lot 16 and lots 15, 14 and 13, about 200 feet south from the north line of those lots, and connecting with the South ditch at a point near the northeast corner of lot 12. This ditch, which we will call the North ditch, has been used by the plaintiffs to carry water from a pumping plant and also water which they took from the main canal at another headgate near lot 1. But this ditch, which is entirely on plaintiffs' land, has never been used to irrigate any of the lots in the western half of this subdivision. There is evidence that the plaintiffs took no water through the East ditch across the middle parcel of lot 16 for nine years before this action was filed and that they largely destroyed that ditch from the north line of the middle parcel of lot 16 to the north end of that ditch. There is also evidence that the plaintiffs, by leveling operations on the south parcel of lot 16, made it necessary for the defendants Pensinger to put in a dam in order to raise the water sufficiently to flow across that parcel so that they could obtain water for their own use on the middle parcel of lot 16. The defendants Pensinger

have constructed three houses and sets of buildings on the middle parcel of lot 16, all near the line of the old ditch which for nine years has been used by them in connection with that parcel.

Briefly stated, the plaintiffs sought in this action to establish their right to an easement across the middle parcel of lot 16; to enjoin the defendants from using that portion of the South ditch between the headgate on the south parcel of lot 16 and the junction of that ditch with the North ditch; to quiet their title to the land over which that portion of the South ditch passes; and to compel the defendants to take their water through a reestablished East ditch and thence through the North ditch to the present junction of the North and South ditches. They also sought to establish a new ditch across the northern end of lot 11 to take the water of the South ditch across lot 11 and to the point in the southeast corner of lot 7 from whence the established ditch runs west, and to thus eliminate the portion of the South ditch which now runs most of the way around lot 6.

The defendants alleged their long use of the South ditch, that it had become hardened by long use and was the most practical way to carry water to their lands, and by way of affirmative relief asked to have their title to that ditch quieted and the plaintiffs restrained from interfering with their rights thereto.

The court found in favor of the defendants finding, among other things, that the South ditch had been used for more than twenty years to carry water by the respective owners and their predecessors; that the plaintiffs acquired title to their lands subject to said easement and right of way; that the East ditch for more than twenty years has been used to carry water across the south parcel of lot 16 and onto the middle parcel thereof; that it has never had a capacity in excess of 2-second feet of water; that it has never been used except to irrigate the south parcel of lot 16, the middle portion of lot 16, and approximately 10 acres of low land lying partly in the north parcel of lot 16 and partly in the northerly portion of lot 15; that the plaintiffs, more than nine years prior to the bringing of this action, totally destroyed and abandoned that portion of the East ditch in the north parcel of lot 16 by filling and leveling processes; that for more than nine years the plaintiffs have not received water

from the East ditch through the middle parcel of lot 16; that the East ditch across the south parcel of lot 16 has been used for more than nine years to carry water to the land of the defendants in the middle partion of lot 16; and that the plaintiffs have never used the North ditch to carry water from the main canal through lots 16, 15, 14, 13 and 11. As conclusions of law it was found, among other things, that the plaintiffs have no easement or right of way across the middle parcel of lot 16; that the defendants are entitled to a perpetual easement and right of way to carry water through the South ditch, with the right to use such additional land on each side of the ditch as may be necessary to provide repair material; and that the plaintiffs be permanently restrained from interrupting the repair, maintenance, rebuilding or cleaning of said ditches or with the defendants' right to use the same. Judgment was entered awarding the defendants a perpetual easement and right of way for the South ditch and for that portion of the East ditch which crosses the south parcel of lot 16, with the right to take land from the sides of the ditches to maintain the same; quieting title to said ditches and rights of way in the defendants; restraining the plaintiffs from interfering with the defendants' use and enjoyment of said ditches and rights of way; restraining the plaintiffs from interfering "with the repair, maintenance, construction, reconstruction and/or rebuilding of said ditches or with the defendants' use thereof"; and decreeing that the plaintiffs have no easement or right of way over and across the middle parcel of lot 16. From this judgment the plaintiffs have appealed.

The appellants' main contention is that it appears from the evidence that they have an easement over the middle parcel of lot 16, which easement was created by grant; that an easement thus created cannot be lost by abandonment or nonuse; and that it follows that the evidence and findings do not support that part of the judgment which declares that such an easement does not exist. In this connection, it is also contended that the evidence shows that the best and most practicable way of taking water from the headgate to the point where the North ditch joins the South ditch is through the East ditch across the middle parcel of lot 16 and then through the North ditch to the point of junction, rather than through that portion of the South ditch between that point and the headgate; that it thus appears that the respondents are making an unreasonable and oppressive use of their ease-

ment across appellants' lands by their use of that portion of the South ditch; and that a court of equity may, and should, prevent such an unreasonable and unnecessary burden on the appellants and decree that the one, instead of the other, of the two fixed locations should be used.

The contention that the appellants have an easement across the middle parcel of lot 16 which was created by grant is based upon the reservations above quoted, which appear in the 1911 deed from the land company to W. W. Pensinger and others. It is argued that these reservations were for the benefit of other parcels of land, and that such a reservation of an easement in the deed by which land is conveyed is equivalent to an express grant of the easement. *Watson* v. *Heger,* 48 Cal.App.2d 417 [120 P.2d 153]; *Weller* v. *Brown,* 160 Cal. 515 [117 P. 517], and *Wagner* v. *Hanna,* 38 Cal. 111 [99 Am.Dec. 354], are cited in support of this proposition. There are many cases holding that a grant will be implied, although a reservation is expressed, where the language used in the instrument and the surrounding circumstances disclose that the parties had such an intention. This is pointed out in *Weller* v. *Brown,* 160 Cal. 515 [117 P. 517], where, in quoting from a New Jersey case, it is said:

" 'That when it appears to be the true construction of the terms of a grant that it was the well understood purpose of the parties to create or reserve a right, in the nature of a servitude or easement in the property granted, for the benefit of other land owned by the grantor, no matter in what form such purpose may be expressed, whether it be in the form of a condition, or covenant, or reservation, or exception, such right, if not against public policy, will be held to be appurtenant to the land of the grantor and binding on that conveyed to the grantee, and the right and burthen thus created and imposed will pass with the lands to all subsequent grantees.' "

The first paragraph of the reservations in question reserved existing ditches. The second paragraph subjected the land to its share of charges under an existing contract for water rights and also reserved to the grantor, its successors and assigns, rights of way for the construction of new ditches that might be considered proper by the grantor, its successors or assigns. Clearly, the right to establish new ditches thus reserved to the grantor was one personal to it and there is no

evidence that that right has ever been assigned to the plaintiffs or to anyone else.

Any possible claim of the appellants to an easement by reason of these reservations must come from the reservation of existing ditches in the first paragraph. The deed in which these reservations are contained conveyed lots 13, 14, 15 and 16, or about 80 acres. The reference to existing ditches, to a general contract settling water rights, and to the possible construction of new ditches, taken in connection with the surrounding circumstances, may well be taken as indicating an intention that the reservation of existing ditches on the 80 acres conveyed was in the nature of a grant of an easement for the benefit of other land owned by the grantor, to the extent that the existing ditches were used to carry water across the 80 acres to other lands or possibly, where they were evidently intended to be used for that purpose. Under the facts as disclosed by the evidence, this could apply only to what we have termed the South ditch, which extended across the 80 acres and into other property.

A different situation appears with respect to what we have called the East ditch. This was a short ditch existing only on lot 16, extending only part-way through it and not connecting with any ditch or any other property, and it was clearly intended to facilitate the distribution of water only on a part of the land conveyed. It was entirely similar to the private ditches existing on most irrigated farms for the purpose of taking water from the main ditch to other portions of the owner's property. In view of the language of the deed and the surrounding circumstances it cannot be held that any intention appears, in connection with this ditch, that it be used in carrying water to other lands owned by the grantor and, under the rule relied upon, there was no grant of an easement insofar as that ditch is concerned. That ditch served and could serve only a part of the land conveyed and there was no dominant tenement.

Between 1911 and 1931, all of lot 16, as well as lots 13, 14 and 15, remained in one ownership and there could be no dominant and servient tenements established over parts of lot 16 arising from the taking of water by W. W. Pensinger to the middle of the north parcel of lot 16. (*Oliver* v. *Burnett,* 10 Cal.App. 403 [102 P. 223].) The deeds by which the appellants acquired the north and south parcels of lot 16 contained no reservations with respect to ditches or rights of way

across the middle parcel of lot 16. After the appellants acquired the north parcel of lot 16 in 1932, they took some water across the middle parcel of lot 16 for four or five years. If it be assumed that this period was long enough to establish an easement therefor, such easement arose from prescription and not from a grant. Under familiar rules the appellants, by failing to take water across the middle parcel of lot 16 for a period of nine years before this action was brought, lost that easement, if any they had. It follows that the evidence and findings support that part of the judgment which declares that the appellants have no such easement.

Under the rule contended for by the appellants the right of the respondents to take water through the South ditch was one based upon a grant to be implied from the language used in the 1911 deed from the land company to W. W. Pensinger and others. Moreover, the evidence shows that the respondents and their predecessors have taken water through that ditch each year for more than forty years, and an easement by prescription for that purpose abundantly appears. However, error appears in one respect in this connection. The evidence shows, without conflict, that the appellants and their predecessors have also taken water through that ditch to water their lands each year for more than forty years. Whether the right be regarded as one arising from grant or, in part, upon prescription their right to carry water through this ditch, when it is allotted to them by the canal company, is equal to that of the respondents and neither is superior to the other. However, the court in its conclusions of law, not only found that the respondents were entitled to an easement for the purpose of carrying water through the South ditch and through the East ditch over the south parcel of lot 16, but further found that title and the right to possession in and to both of these ditches should be quieted in the respondents, together with the right to take material from the sides of the ditches to repair the same. And the judgment, in addition to awarding the respondents an easement and right of way through these ditches, with the right to repair them, quieted title and possession of both of these ditches and rights of way therefor in the respondents. The decree not only enjoined the appellants from interfering with the respondents' use of these ditches but further enjoined them from in any way interfering with the repair, maintenance, or rebuilding of said ditches. The appellants

not only had an equal right to use the South ditch and that part of the East ditch which was within the south parcel of lot 16, but they owned much more land irrigated from the South ditch than was owned by the respondents and had long used that right. Having at least an equal right to the use of that ditch they should not be deprived of their interest therein, and should not be restrained from such maintenance and repair of the ditch as might be necessary during the times they were using water through it and, if necessary, at such other times as might be necessary to safeguard their rightful use of it. No reason appears, in fact or in law, for quieting title in those ditches in the respondents or for enjoining the appellants from such maintenance or repair of the ditch as might reasonably be required to enable them to continue their use thereof. The conclusions of law and the judgment should be so modified as to protect these rights, to which the appellants are clearly entitled. (*Wallace Ranch W. Co.* v. *Foothill D. Co.*, 5 Cal.2d 103 [53 P.2d 929].)

What we have already said disposes of the contentions that there were two fixed locations and easements through which water could be taken from the headgate through lots 16, 15, 14, 13 and 12 to the point where the North ditch now joins the South ditch, and that the court should have required the respondents to use the northerly route as being better and less burdensome upon the appellants than the one to the south; and that a court may change a fixed location when another is available, and when such relief may be given without impairing the rights of the holder of an easement. It may be further observed, in this connection, that there is a conflict in the evidence with respect to the question as to whether the northerly route is actually better than the one to the south.

The appellants further contend that the part of the judgment establishing the upper portion of the South ditch around and across lot 6 ''cannot be supported on any ground involving reasonable usage, feasibility or necessity.'' It is argued that this portion of the South ditch runs through rising ground in such a way that it is difficult to get much water through it and that water could be gotten to the southeast corner of lot 7, from which it is taken on westward, much better by constructing a connecting ditch from that point across the northerly part of lot 11 to the South ditch at a point on the line between lots 11 and 12, than by continuing

the present arrangement whereby the South ditch proceeds on around most of lot 6 and comes back to the southeast corner of lot 7. If it be assumed that this proposed change would be better, the facts remain that there is an easement over the present course of this portion of the South ditch and none over the line of the connecting link thus suggested by the appellants. Nothing is pointed out which indicates error in this portion of the judgment.

The judgment is reversed, with directions to the trial court to amend the conclusions of law and judgment in the respects above suggested and so as to conform with the views herein expressed. Each party to pay his own costs.

Marks, J., and Griffin, J., concurred.

A petition for a rehearing was denied March 28, 1946, and appellants' petition for a hearing by the Supreme Court was denied April 29, 1946.