THOMAS B. F. BOLAND *vs.* ST. JOHN'S SCHOOLS & another.

Worcester.    October 2, 1894. — March 2, 1895.

Present: ALLEN, HOLMES, KNOWLTON, MORTON, & LATHROP, JJ.

*Way — Deed — Reservation — Injunction — Damages.*

A., who owned land upon a public street, erected thereon a long wooden block of tenements facing on the street, and, in the rear and south of the block, several houses, and laid out a driveway running east and west between the rear of the block and the front of the houses, and also passageways at the east and west ends of the block leading from the driveway to the street. These ways were intended by A. as passageways or driveways to and from the street, and were in actual use by owners, tenants, and others having occasion so to use them, when A. conveyed one of the houses to B., by a deed which bounded the land in part as "running north . . . to a driveway, thence easterly on said driveway," and which also contained the following reservation: "Reserving that the said driveway between said houses as now laid out shall remain open and common to all parties having right to enter therein." B., when he took his deed, gave back to A. a mortgage which contained the same description and reservation as in the deed. A. then conveyed the block above mentioned to C. by a deed describing the land in part as "running south . . . to a driveway running in rear of said lot to be conveyed; thence turning by said driveway east . . . to a driveway, . . . reserving hereby all rights of passage as now laid out in the driveways and passageways connected with said premises, and the same are never to be closed or obstructed while said premises remain as now laid out, except the parties now or hereafter owning the surrounding premises mutually agree to alter and rearrange the same." The mortgage given by B. to A. was subsequently foreclosed by D., the son of, and acting as agent for, A., who made to D. a mortgagee's deed, under the power of sale contained in the mortgage, of the entire premises described in B.'s deed; and afterwards D., by A.'s direction, conveyed a portion of the premises to his brother, and another portion to his father, retaining the balance in himself. *Held*, that it would seem that B. took to the centre of the driveway in fee, with a right of way over the other half, the half belonging to him being subject to a similar right of way on the part of all persons having the right to enter upon the driveway; but that, if this were not so, there passed, as appurtenant to the premises conveyed to B., an implied right to use the ways, and that this appertained to every portion of the premises so conveyed. *Held, also*, that a subsequent grantee of C.'s land had no right, under the reservation in C.'s deed, as against D., to close up the driveway in the rear and the passageway at one end of the block without D.'s consent.

A. acquired, either by grant or as appurtenant to his land, a right of way over a driveway to a public street. B., who owned land abutting on the way, obstructed a part of the way by the erection of a fence. A. thereupon brought a bill in equity against B. for an injunction and for damages. During its pendency B. erected another fence which wholly obstructed the way. The judge who heard

the case found that no laches were attributable to A. in bringing the suit, or in asserting his rights; that the fence could be easily removed, and without great or disproportionate injury and loss to B.'s property; and that it was the obvious intention of B. to prevent A. from using the way as originally located, and to appropriate the same to the uses and purposes of his premises, to the permanent exclusion of A. therefrom for use as a passageway from his premises to the street. *Held,* that A. was entitled to a mandatory and perpetual injunction for the removal of the obstructions, and to nominal damages.

BILL IN EQUITY, filed in the Superior Court, against St. John's Schools, a corporation, and Patrick T. O'Reilly, and, O'Reilly having deceased, by amendment, against Thomas D. Beavan, the grantee in a deed from the devisee under and executor of the will of O'Reilly, to establish a way, to obtain the removal of certain obstructions therein, to restrain the erection and maintenance of any such obstructions, and for damages.

The case was heard by *Aldrich,* J., and reported for the determination of this court, in substance as follows.

In 1836, Tobias Boland, the common grantor of the plaintiff and the defendants, owned a tract of land at the corner of two public streets in Worcester, being 130 feet in depth southerly from Temple Street, and 660 feet in length easterly from Green Street, as shown partially on the following plan. In 1868, he erected on his land six houses, a long wooden block consisting of several tenements, which faced on Temple Street, three houses in the rear and south of the long block, one house east of the long block and facing on Temple Street, and one house in the rear and south of the last named house, which was on the lot now owned by the plaintiff. In locating these houses, he left passageways and driveways between the houses as follows: a passageway or driveway in the rear of the long block and between the block and the houses erected in the rear of the same, which was called Boland Court, extending easterly from the east line of the land of one Conneary to the west line of the land of one Dunn; another passageway on the east side of the block extending from Temple Street south to the south line of Boland's land, where it ended and was closed by a fence; another passageway on the west side of the block, extending from Temple Street south to and opening into the passageway in the rear of the block; also two other passageways between the houses erected directly in the rear of the block, which ex-

tended from the passageway in the rear of the block south to
the south line of Boland's land, where they ended and were
enclosed by a fence.   All of these passageways were of sufficient
width for the passage of teams, were well defined by buildings

or fences, and were intended by Boland as passageways or driveways to and from Temple Street.

These passageways were open, and in actual use by Boland, his grantees and occupants, from about the year 1868 until the obstruction complained of in the plaintiff's bill. The three houses in the rear of the long block and the plaintiff's house were set facing east and west, so that the entrances to the same were into and upon the passageways running north and south. To what extent the west passageway and that part of the passageway obstructed by the defendants, running east and west, was used by the plaintiff and his tenants, and the plaintiff's grantors and their tenants, under a claim of right, is uncertain and indefinite ; but all of the passageways were open, unobstructed, and used by teams and as footways by tenants, owners, and others having occasion to enter the same, from the time of the original laying out to the time of the obstruction by the defendants in 1889 ; and the plaintiff and his tenants and the plaintiff's grantors and their tenants have, from the laying out of the driveways to the time of the obstruction, used the west driveway, and that part of the driveway in the rear of the long block which has been obstructed by the defendants, for entrance to and exit from the plaintiff's lot and house, to some extent, and whenever they chose so to do. In 1889, the authorized agents of the defendant St. John's Schools, and the authorized agent of the defendant O'Reilly, (from whom the defendant Beavan derives title,) enclosed a portion of the west passageway extending southerly from Temple Street over the O'Keefe lot by a fence running from a point in the southerly line of Temple Street six feet and two inches west of the face of the long block to nearly the north line of the O'Sullivan lot, leaving a footway six feet and two inches wide between the block and the fence, cleared away the buildings on the Conneary lot, and made all of that lot and the part of the way so enclosed west of the fence a part of the yard in front of the school building of the St. John's Schools previously erected on the lots in the rear. The plaintiff thereupon began this suit. While the suit has been pending, the defendants have torn down nearly one half of the long block, namely, the westerly half, and erected a second fence extending from a point in the south line of Temple Street about

five feet west of and parallel to the face of the long block, as
shortened, to a point in the north line of land in the rear of
the block conveyed by Boland to Daniel Daley on September
11, 1873, cleared away the buildings from the Looney lot and
the O'Sullivan lot, and made the land and the part of Boland
Court west of the fence part of the yard in front of the school
building.   Upon the shortening of the long block and the erec-
tion of a fence west of the same, the first fence, which was
erected in the passageway, was removed.   This second fence
was of pickets, which was supplanted by a high board fence
running from Temple Street nearly to the centre of the passage-
way in the rear, through which it extended, thence easterly
about forty feet, and thence southerly, effectually excluding the
plaintiff from the use of so much of the rear passageway run-
ning east and west as lies westerly of the fence, and excluding
him from the use of the west passageway to Temple Street, and
enclosing all the land west of the fence as part of the prop-
erty of the defendant St. John's Schools.   The fence, as now
erected, is designed to be a permanent structure, enclosing the
yard and premises of St. John's Schools, and, while the fence
can be easily removed and without great or disproportionate
injury and loss to the defendants' property, it is the obvious
intention of the defendants to prevent the plaintiff from using
said west passageway as originally located, and to appropriate
the same to the uses and purposes of the St. John's Schools,
to the permanent exclusion of the plaintiff therefrom for use as
a passageway from his premises to Temple Street.   No laches
is attributable to the plaintiff in the bringing of this suit, or in
any claim of right as against the defendants.   The long block
referred to was upon the lot conveyed by Boland to one O'Keefe
on January 28, 1874, and extended from Temple Street south-
erly to the driveway in the rear of it, and from the east to the
west driveways above mentioned.   A part of the description
in the deed from Boland to O'Keefe was as follows: "Thence
running south fifty-one feet, more or less, to a driveway running
in rear of said lot to be conveyed; thence turning by said
driveway east one hundred and twenty-one feet, more or less,
to a driveway"; and the deed also contained the following:
"Reserving hereby all rights of passage as now laid out in the

driveways and passageways connected with said premises, and the same are never to be closed or obstructed while said premises remain as now laid out, except the parties now or hereafter owning the surrounding premises mutually agree to alter and rearrange the same." The defendant Beavan became the owner of the O'Keefe lot through mesne conveyances, and now owns the same; and the defendant St. John's Schools owns the lots and buildings thereon west of that passageway which is east of the long block running from Temple Street southerly to the rear boundary of the land originally owned by Boland, except the O'Keefe lot. These obstructions of the passageways around the long block were made without the consent of Boland, unless such consent is implied by the deed to O'Keefe, the conveyances in the case, and the establishment of the passageway east of the long block extending from Temple Street southerly to the rear line of the land originally owned by Boland. The plaintiff's lot is a portion of the land conveyed by Boland to Daley above mentioned, and mortgaged the same day by Daley to Boland. The deed from Boland to Daley contained the following description in part: " Thence running north sixty feet, more or less, by land of John P. Sullivan to a driveway, thence easterly on said driveway one hundred and fifty-four feet, more or less, to land of said Dunn," at a point on whose land the lot commenced. The deed also contained the following reservation: " Reserving that the said driveway between said houses as now laid out shall remain open and common to all parties having right to enter thereon." The mortgage from Daley to Boland contained the same description and reservation as in the deed to him above described. Daley being unable to pay the amount due on the mortgage, the same was foreclosed by Boland in the following manner. Boland gave to his son, the plaintiff, a written power of attorney to make an entry under the mortgage for the purpose of foreclosing the same; and, in pursuance thereof, the plaintiff on April 25, 1877, made an entry upon the land, as agent and attorney of his father, for the purpose of foreclosing the mortgage, and recorded a certificate to that effect.

On March 30, 1877, the premises described in the mortgage were advertised for sale under the power given in the mortgage. At the time of the commencement of the foreclosure, it was

agreed and stipulated between Boland and the plaintiff that the Daley land should be sold by auction under the power given in the mortgage; that the plaintiff should purchase it at the auction sale in behalf of his father, and take a conveyance thereof to himself, and thereby foreclose the mortgage; and that, after the mortgage was foreclosed by such sale, the plaintiff should reconvey to his father one of the three lots, and should convey to John A. Boland, his brother, one of the lots, and that the third lot should be retained by the plaintiff.

In pursuance of this agreement the Daley land was sold by public auction under the power in the mortgage, on April 30, 1877, and the same was bid off by and conveyed to the plaintiff by deed, under the power in the usual form, without any consideration passing from the plaintiff to his father. The mortgage contained no agreement that the premises might be purchased by the mortgagee, or any one in his behalf.

In further pursuance of the agreement between Boland and the plaintiff, the latter, on May 21, 1877, conveyed the westerly house and lot of the Daley land to his father, and the middle house and lot to his brother, John A. Boland, and the third lot, namely, the easterly house and land, was retained by the plaintiff, and has ever since been owned by him, and is the lot of land to which he claims a right of way as appurtenant. In the foreclosure of the Daley mortgage, the plaintiff acted as the agent and attorney of his father, and the plaintiff, although the nominal owner, had no right in the property as against his father. After the foreclosure, the conveyances above recited were made by direction of Tobias Boland, it being his intention to give the two lots to his sons, and to confirm in the plaintiff the title to the third lot.

The purchase of the Burns, Looney, O'Sullivan, and Conneary lots, the erection of the school buildings, the erection of all the fences enclosing the schoolhouse yard, and the cutting off of the west part of the long block, were all acts authorized by the defendants; and the fences complained of are maintained by authority of and with the consent of the defendant Beavan, for the benefit of the St. John's Schools, and were erected and are now maintained by the defendants, under a claim of right. The driveway from Temple Street to the plaintiff's

house and lot over and through the east driveway, running from Temple Street south past the plaintiff's front door, is a straight way, twenty feet wide, furnishing ample facilities to the plaintiff for ingress and egress from Temple Street; and the plaintiff claims a right of way over and in the west passageway and the driveway running east and west in the rear of the long block, which were obstructed by the defendants, as appurtenant to the grant from Tobias Boland to Daley, and to his land as parcel of the grant.    By the obstructions complained of, the plaintiff's estate has been damaged in the sum of $400.

If the plaintiff had a right of way, as contended, and the defendants were not required to remove the obstructions complained of, judgment was to be entered for the plaintiff in the sum of $400; but if the plaintiff was entitled to a mandatory order and perpetual injunction for the removal of the obstructions, he was to be awarded nominal damages additional to such order and injunction.

*R. Hoar*, for the defendants.

*C. A. Merrill*, for the plaintiff.

MORTON, J.    The premises conveyed by Tobias Boland to Daniel Daley on September 11, 1873, were bounded in part as follows: " thence running north sixty feet, more or less, by land of John P. Sullivan to a driveway, thence easterly on said drive way one hundred and fifty-four feet, more or less, to land of said Dunn."    The driveway thus referred to was manifestly the one running east and west in the rear of the long block.    No other answers to the distance.    The deed also contained a reservation referring to this driveway, and " Reserving that the said driveway between said houses as now laid out shall remain open and common to all parties having right to enter thereon."    It would seem, therefore, that Daley took to the centre of the driveway in fee with a right of way over the other half, the half belonging to him being subject to a similar right of way on the part of all parties having the right to enter upon the driveway.    *Fisher* v. *Smith*, 9 Gray, 441.    *Boston* v. *Richardson*, 13 Allen, 146, 153, 154.    *White* v. *Godfrey*, 97 Mass. 472, 474.    *Stark* v. *Coffin*, 105 Mass. 328, 330.    But if this were not so, inasmuch as it appears that this driveway and the passageways at the east and west ends of the long block were laid out by Tobias Boland

when he built the long block and the other buildings in 1868, and were intended by him, as the report finds, as passageways or driveways to and from Temple Street, and were in actual use by owners, tenants, and others having occasion to pass and repass at the date of Daley's deed, we think that there passed as appurtenant to the premises conveyed to Daley an implied right to use them, and that this right appertained to every portion of the premises so conveyed. *Lefavour* v. *McNulty*, 158 Mass. 413. *Regan* v. *Boston Gas Light Co.* 137 Mass. 37. *Goss* v. *Calhane*, 113 Mass. 423. *Fox* v. *Union Sugar Refinery*, 109 Mass. 292. *O'Linda* v. *Lothrop*, 21 Pick. 292. It follows then that the plaintiff has a right of way over the driveway and the passageways, unless it has been extinguished by something which occurred when the Daley deed was given or has taken place since.

It appears that at the time when Daley took his deed he gave back to Tobias Boland a mortgage which contained the same description and reservation as the deed. This mortgage was foreclosed in 1877 by the plaintiff, acting as agent for and on behalf of Tobias Boland, who made to the plaintiff a mortgagee's deed under the power of sale contained in the mortgage of the entire premises described in the Daley deed, including those now belonging to the plaintiff. Subsequent to this the plaintiff, by direction of Tobias Boland, conveyed to John A. Boland a portion of the Daley premises, and to himself, the said Tobias, another portion. There was thus left in the plaintiff the premises now owned by him, and which have never been conveyed to him by any other deed than the one made to him by Tobias Boland as mortgagee under the Daley mortgage. Subsequent to the Daley deed, and prior to the foreclosure of the mortgage, Tobias Boland conveyed to one O'Keefe the long block aforesaid. A part of the description contained in said deed is as follows : " thence running south fifty-one feet, more or less, to a driveway running in rear of said lot to be conveyed ; thence turning by said driveway east one hundred and twenty-one feet, more or less, to a driveway, . . . reserving hereby all rights of passage as now laid out in the driveways and passageways connected with said premises, and the same are never to be closed or obstructed while said premises remain as now laid out, except the parties now or hereafter owning the surround-

ing premises mutually agree to alter and rearrange the same."
The driveway referred to is the same as in the Daley deed, and
it would seem that under this description the grantee, as in the
Daley deed, took to the centre of the driveway and passageways,
with a right of way over the remaining half, and subject to a
similar right on the part of others abutting on the way over the
half belonging to him.

The defendants contend that the plaintiff stands in the same
position which he would have occupied if the title to the Daley
premises had actually vested in Tobias Boland under the fore-
closure proceedings, and a deed had then been made by Tobias
to the plaintiff of the premises which he now owns. And they
insist that in that event the plaintiff would have taken subject
to the reservation contained in the O'Keefe deed, and that under
that reservation they have the right to close up the passageway
and driveway as they have done, because they now own all the
surrounding premises.

We do not think that this contention can avail the defendants.
The reservation in the O'Keefe deed could not diminish any
rights which were appurtenant to the Daley premises at the time
of the execution of the deed to O'Keefe; and, as we have already
seen, a right of way over the driveway and passageways was
appurtenant to every part of the Daley premises. If, therefore,
the title to the Daley premises had vested under the foreclosure
proceedings directly in Tobias, and he had thereupon conveyed
to the plaintiff the premises now belonging to him, there would
have passed as appurtenant to them a right of way over the
passageways and driveway. The title of Tobias would have
been acquired under the mortgage, and he would have taken the
premises with the same rights and subject to the same easements
to which they were entitled and subject when Daley held them.
This would be equally true whether Daley and O'Keefe took to
the centre or the sides of the driveway.

But, further, we think that the Daley premises, and every
part of them, fairly may be included in the description of " sur-
rounding premises " contained in the reservation in the O'Keefe
deed, and that the defendants therefore, as owners of the O'Keefe
premises, had no right, as against the plaintiff, to close up the
driveway and passageway without obtaining his consent, which
they have not done.

We doubt whether the foreclosure proceedings are to be regarded as having vested the title to the plaintiff's premises in Tobias Boland. It is true that the plaintiff acted as the agent of his father in foreclosing the mortgage. But it was understood from the first that these premises were to be his. And he derived his title to them, not from his father directly, but through his father as mortgagee, and held them as his own all the time.

The remaining question is whether the plaintiff is entitled to a removal of the obstructions, and we are of opinion that he is. The defendant St. John's Schools and the original defendant O'Reilly proceeded in plain violation of the plaintiff's rights. The first fences that were built obstructed a part of the west passageway and of the driveway in the rear of the long block. Thereupon the plaintiff brought this bill for an injunction, and for damages. During its pendency the defendants erected another fence which wholly obstructed the west passageway and the westerly portion of the driveway.

The report expressly finds that no laches are attributable to the plaintiff in bringing this suit, or in asserting his rights. It also finds that the " fence can be easily removed, and without great or disproportionate injury and loss to the defendants' property," and that " it is the obvious intention of the defendants to prevent the plaintiff from using said west passageway as originally located, and to appropriate the same to the uses and purposes of the St. John's Schools, to the permanent exclusion of the plaintiff therefrom for use as a passageway from his premises to Temple Street." The case comes therefore clearly within the principles laid down by this court in *Lynch* v. *Union Institution for Savings*, 159 Mass. 306, 308, as governing the issue of mandatory injunctions. See also same case, 158 Mass. 394; *Starkie* v. *Richmond*, 155 Mass. 188; *Attorney General* v. *Algonquin Club*, 153 Mass. 447, 454; *Tucker* v. *Howard*, 128 Mass. 361; *Linzee* v. *Mixer*, 101 Mass. 512.

*Perpetual injunction to issue for removal of obstructions and nominal damages to be assessed.*