R. E. STEPHENS, Appellant, v. LENORA V. BOYD, Appellee.

**Real property:** EASEMENTS: COMMON STAIRWAY. Where the owner of adjoining lots constructs buildings thereon, and practically on the division line of the lots builds a single stairway to the second story for the accommodation of both buildings, which was essential to both and constantly used by the occupants of the buildings for a long series of years, a conveyance of the lots to separate grantees carried with it an easement or the right of each purchaser to use the common stairway. And in an action for the enforcement of that right it was necessary for the plaintiff to show a way of necessity.

**Same:** ESTOPPEL. Although plaintiff may have unadvisedly admitted that he had no conveyance of the adjoining lots, still as the admission was in no manner acted upon by defendant, and plaintiff very soon thereafter sought legal advice, and upon learning his rights instituted suit to restrain defendant from removing the stairway, he was not estopped by the admission to claim the right to use the easement; nor was the same conclusive against him on the merits of the case.

**Same:** FORMER ADJUDICATION. Where the plaintiff in an action to enjoin the removal of a common stairway was not a party to a proceeding to sell the adjoining lot for the payment of the owner's debts after his death, and the right to use the stairway was not involved in that proceeding, the judgment entered therein was not an adjudication of his rights in the easement.

**Same:** CONVEYANCES: TITLE. Where testator's daughter, to whom he had both conveyed and devised property, the title not to vest until the death of testator, conveyed the same prior to his death and her grantee immediately recorded his deed, the title passed

to her grantee by virtue of her deed immediately upon the death of the testator.

**Administrator's sale:** GOOD FAITH PURCHASER. The purchaser at an administrator's sale for the payment of debts takes only such title as the deceased had; he is not entitled to protection as a purchaser in good faith.

*Appeal from Jackson District Court.*—HON. L. J. HORAN, Judge.

THURSDAY, NOVEMBER 14, 1912.

SUIT in equity to enjoin defendant from tearing out a stairway which is used in common for adjoining buildings. The trial court dismissed the petition, and plaintiff appeals.—*Reversed* and *remanded.*

*W. C. Gregory,* for appellant.

*Keck & Keck* and *F. D. Kelsey,* for appellees.

DEEMER, J.—Plaintiff and defendant are the owners of adjoining buildings situated on lots 3 and 4, in block 19, in the city of Maquoketa, Iowa. These are inside lots fronting on the main street in said city, and there is no alley to the rear of plaintiff's lot 3. The two lots were originally owned and improved by one John E. Goodenow, now deceased, and plaintiff obtained title to his lot through one Mrs. H. C. Tinker. Mrs. Tinker obtained her title from her father, John E. Goodenow, in the manner hereinafter stated. Defendant obtained her title to lot 4 through one B. D. Ely; the latter obtaining his title in virtue of a sale of the property by the executor of the estate of John E. Goodenow, deceased, for the purpose of paying claims against his estate. In the year 1857 Goodenow erected a brick building upon lot 4, and on the inside of the north wall of the building, which was placed approximately upon

the boundary line between lots 3 and 4, he built a stairway something like two feet and ten inches in width, running to the upper story of the building. This stairway was constantly in use from that time down until the commencement of this suit. In the year 1873 Goodenow erected a brick building on lot 3, and, in order to obtain access to the second story thereof, he so planned it as to use the stairway which had been erected in the building on lot 4, cutting a hole in the partition wall near the upper landing of the stairway, and erecting some steps leading from this landing on to the second floor of the building on lot 3. During the time that Goodenow owned the two lots, this stairway was constantly and continuously used as a means of ingress and egress to the second stories of the two buildings. A temporary stairway at the rear of the buildings was constructed and used for a while, but this was torn down because it was thought to be unsafe. So long as these buildings were owned by Goodenow, no question arose, of course, as to the ownership of this stairway, or as to whether or not it was an appurtenance to lot 3. But, when he parted with his title to the separate lots and the ownership became several, the question of ownership and the nature of that ownership became vital. As already stated, plaintiff became the owner of the lot by deed from Mrs. H. C. Tinker. This deed was one of bargain and sale, without covenants of warranty, and was executed on November 12, 1909. It described the property as lot 3 in block 19, but in the habendum clause the appurtenances were covered by the stereotyped clause usually found in instruments of that character. Plaintiff immediately went into possession under this deed, and continued to use the stairway in question by himself or tenants without objection or protest down to near the time of the commencement of this suit. Mrs. Tinker obtained her title either by the will of her father, John E. Goodenow, or through a deed from him bearing date November 15, 1901. This latter deed

was not actually delivered to the grantee until some time after the death of Goodenow, which occurred on September 3, 1902. This deed which was one with full covenants of warranty was deposited, by the maker with his will, with some attorneys in the city of Maquoketa, to be held until the death of Goodenow, and then delivered to the grantee therein named. As a matter of fact the deed was not actually delivered until some time in the year 1910, when it was filed for record, and is now one of the muniments of title. Goodenow's will makes the following reference to this deed:

2. I give and bequeath to my beloved daughter, Mrs. H. C. Tinker, living in Chicago, Ill., the following premises situated in Jackson Co., Iowa, to wit: Lot No. 3, Blk. 19, in the city of Maquoketa, Iowa, according to Perrin's survey, of 1873. . . .

8. I have made and executed jointly with my wife a deed to the property given to my last named children, signed by myself and my wife, which deeds are to be left with my will and upon our death as aforesaid, my executor, D. H. Anderson, named shall hand to each of the persons therein named, a deed of the portion of property I intended for them.

Said deed I executed and duly acknowledged on the 15th day of November, 1901.

After the death of Goodenow, his executor made application to the probate court for authority to sell lot 4 for the purpose of paying claims against the estate, and Mrs. Tinker was made a party to that application, and was properly served with notice thereof. This application was made some time in the year 1904, and, after a hearing was granted and pursuant thereto, the property was sold to B. D. Ely, and a deed of date of March 21 was executed and delivered to him. This deed described lot 4 by metes and bounds, and fixes the north boundary as the center of the brick wall between the two buildings. Mrs. Tinker made no appearance to the application, and the order of sale was

made upon an application to sell lot 4 for the payment of debts. So far, there is no dispute over the facts, and upon the record so made, plaintiff has at least a *prima facie* case. There can be no doubt of his ownership of lot 3, and whether his title came by will or deed is largely immaterial, except as it bears upon the question of former adjudication of the matters in controversy in the proceedings to sell lot 4 to pay debts.

I.    When Goodenow severed the ownership of the two lots, and conveyed the same either by will or deed to different individuals, the grantee of lot 3 took his property with an easement in lot 4 which was an appurtenance to lot 3, and lot 4 became burdened with an easement in favor of the owner of lot 3.    This is hornbook law, supported by the following, among other, cases: *Marshall Ice Co. v. La Plant,* 136 Iowa, 621; *Carrigg v. Bank,* 136 Iowa, 261; *Teachout v. Duffus,* 141 Iowa, 466; *Keokuk Co. v. Weisman,* 146 Iowa, 679.    And this easement passed with the grant of lot 3.    *Keokuk Co. v. Weisman,* 146 Iowa, 679. See, also, *Baker v. Rice,* 56 Ohio St. 463 (47 N. E. 653); *Boland v. St. John's School,* 163 Mass. 229 (39 N. E. 1035); *Portman v. Topliff,* 138 Iowa, 19.

Appellee relies, however, upon three propositions in support of the decree of the trial court: First.    She contends that the conveyance of lot 3 did not operate to transfer to the grantee an easement in lot 4, for the reason that the stairway was not essential to the use of the premises conveyed.    Second.    She insists and offered evidence to prove that plaintiff never made any claim to an easement in lot 4, but, on the contrary, distinctly asserted that he made no claim thereto, and that, by reason of these facts, he is estopped from claiming that any such thing exists. Third.    She claims that the matter of an easement in lot 4 was adjudicated adversely to plaintiff in the proceedings

brought by the administrator to sell the same to pay the debts of the deceased.

As to the first proposition, the record shows that the stairway was essential to the convenient use and enjoyment of lot 3, and we think it passed by the conveyance to Mrs. Tinker, and through her to the plaintiff.

However, it was not necessary, we think, that plaintiff show a way of necessity. His grantor had so constructed and used the two buildings as to create an easement in favor of lot 3 as soon as he destroyed the unity of title by the conveyance to his daughter. Of course, if there was another way whereby to reach the second story of the building on lot 3, that fact might, and should, be taken into consideration in determining whether or not the stairway was intended as a common entrance to the two buildings, or was simply a temporary expedient, subject to change at any time. But here there was no other available entrance to the second story from any street or alley, and it is clear to our minds that the stairway was erected to furnish that sort of entrance.

II. In support of the second proposition, defendant relies upon some declarations or admissions claimed to have been made by the plaintiff to the effect that he made no claim to the stairway. We are satisfied from the record that plaintiff, who was not versed in the law, did not think he had anything more than a permissive right to use the stairway until he consulted with a lawyer just before the bringing of this suit as to his rights in the premises. He took this advice because of a threat then made by defendant to tear out the stairway, and found that he was entitled to use the same. On the same day that he brought the suit he had a conversation with the defendant, or with her husband, or both, in which he admitted that he had no conveyance to lot 4, and doubtless in an effort to induce defendant not to tear out the stairway sought to excuse his conduct by placing the responsibility

2. SAME: estoppel.

for his action upon his tenant, who he said was insisting upon the preservation of the way. But assuming for the purposes of the case that he admitted to defendant and her husband that he had no right to the stairway, as they claim he did, it yet appears that on the same day and within a few hours after the admission was made and before defendant did anything on the strength of the admission, plaintiff commenced this suit to enjoin the tearing out of the stairs. Under such circumstances, there is no estoppel, for defendant did nothing on the strength of plaintiff's admissions, and has in no manner changed her position since the admissions were made. *Byer v. Healy,* 84 Iowa, 1; *Guest v. Opera House,* 74 Iowa, 457; *Vogt v. Grinnell,* 123 Iowa, 332.

Plaintiff's admissions should doubtless be considered upon the main question as to whether or not there was an easement in lot 4, but they are not conclusive upon him. In considering them for the only purpose for which they may legitimately be used, we must also take into account the circumstances under which they were made, the knowledge that plaintiff had of his legal rights in the premises, and all the other facts in the case. The law upon the subject of easements in stairways used in common is not generally understood by laymen, and the profession is not agreed upon it. Indeed, in this very case, counsel, after seeking aid from the books, are not agreed, and it is not surprising to find that plaintiff did not know his full rights in the premises, and may have assumed that he did not own any rights in lot 4 because of his unfamiliarity with the law of easements and appurtenances to real estate. If there were any doubt as to what would pass by the conveyance, and plaintiff, after being advised as to his rights, had disclaimed any right of easement, he should be held to his disclaimer. But that is not the record here, and he clearly is not estopped.

III. Her third and final proposition that all matters

were adjudicated in the proceedings to sell the real estate
of the deceased to pay debts is without merit.

3. SAME: former adjudication.  Plaintiff was not a party to the proceedings
to sell lot 4.    He was in possession of lot 3, and his deed
thereto was executed November 15, 1901.

This was before the death of Goodenow it is true, but
by that deed he took whatever title his grantor Mrs. Tinker
had, and, whatever her rights in the premises, these passed
to plaintiff as soon as she took title to the

4. SAME: conveyances: title.  lot.    Testator died in September of the year
1902, and upon his death, if not before, title to lot 3 passed
to his daughter, Mrs. Tinker. *Lewis v. Curnutt,* 130 Iowa,
423.   The will itself was of record, and, although not pro-
bated for some time after testator's death, title, even if it
passed through the will, related back to the time of tes-
tator's death.   As Mrs. Tinker had already conveyed what-
ever interest she had to plaintiff, he, plaintiff, immediately
became invested with Mrs. Tinker's title, and this related
back to the time of testator's death.   Plaintiff's deed was
recorded, as we understand it, shortly after it was made,
but, if not, title passed as between testator, his heirs, and
representatives upon testator's death.   Plaintiff was not
made a party to the proceedings to sell lot 4 for the pay-
ment of debts, and he had no notice thereof.   Notice to his
grantor who had parted with all her interest in lot 3 or
the easement in lot 4 was not binding upon him, and he has
not until this case was brought had his day in court.   This,
it seems to us, is a sufficient answer to the defendant's plea
of former adjudication.   Aside from this, however, it ap-
pears that the application made by the executor was simply
to sell lot 4 for the payment of debts, and there is no show-
ing that any question of easement was involved in that pro-
ceeding.   It is doubtful if that question could have been
considered or put in issue in the proceedings to sell the
real estate, and certainly plaintiff's rights could not be
foreclosed in an action to which he was not a party.

A purchaser at an executor's or administrator's sale to pay debts takes nothing more than the title held by the deceased. He is not entitled to protection as a good faith purchaser, although there may be cases where equity will give him some relief, and, as a rule, he can not rely upon a warranty either express or implied. *Summer v. Williams,* 8 Mass. 162, (5 Am. Dec. 83); and cases cited in 18 Cyc. 826 and 827. Even were this not so, he is bound to take notice of all those things which would charge an ordinary purchaser. Here plaintiff was in the possession and use of the property, and of the stairway, and this in itself would be notice to any prospective purchaser of his rights. There was no adjudication binding upon plaintiff. We are satisfied from the whole record that plaintiff is entitled to the relief asked, and that the trial court was in error denying it.

**5. ADMINISTRATOR'S SALE: good faith purchaser.**

The decree will, therefore, be reversed, and the cause remanded for one in harmony with this opinion.

*Reversed* and *remanded.*