[S. F. No. 6969.   Department Two.—July 1, 1916.]

SILVIO H. CHEDA, Appellant, v. JULIA C. BODKIN et al., Defendants; JULIA C. BODKIN and T. P. BODKIN, Respondents.

[S. F. No. 7075.   Department Two.—July 1, 1916.]

SILVIO H. CHEDA, Respondent, v. JULIA C. BODKIN, T. P. BODKIN, and GUMESINDO PACHECO, Defendants and Appellants; CATALINA C. VALENCIA et al., Defendants.

PLEADING—ALLEGATION OF OWNERSHIP—SETTING OUT CHAIN OF TITLE. As a general rule, where a pleader sets forth his chain of title and upon that chain pleads ownership, the allegation of ownership becomes a mere conclusion of law.

EASEMENTS—SINGLE OWNERSHIP OF SEVERAL TRACTS—CONVEYANCE OF SEPARATE TRACT.—Where the owner of one heritage consisting of several parts has so adapted them that one derives a benefit from the other, when he sells one of them without making mention of the incidental burdens of one in respect to the other, an implied understanding arises that the burdens and correlative advantages shall continue as before the separation of the title.

ID.—INJUNCTION — RIGHT TO WATER SUPPLY — PLEA OF PLAINTIFF'S OWNERSHIP—TRIAL OF ISSUE AS TO OWNERSHIP.—In this action to enjoin the defendants from interfering with an asserted easement to have a certain supply of water flow from the lands of defendants

to and upon plaintiff's property and for damages for the cutting of water-pipes, a distinct allegation in the complaint of the plaintiff's ownership of the easement, standing alone, and on which issue was joined and the trial had, is held to be a sufficient averment of the ultimate fact that the plaintiff owned the easement, and not a mere conclusion from the plea of his chain of title. This being the issue tried, the defendants were not misled, under the circumstances of the case, even if it be conceded that the creation of the easement was alleged in one way and proven in another.

ID.—QUASI EASEMENTS—SEVERANCE OF TRACTS UNDER TERMS OF WILL. *Quasi* easements which a testator has apportioned to various tracts during his lifetime, ripen into easements in favor of or burdens upon such parcels of land at their severance under the terms of such testator's will.

ID.—TRANSFER OF LAND PASSES EASEMENTS—DEVISE.—Section 1104 of the Civil Code, providing that a "transfer" of real property passes all easements attached thereto, is applicable in the matter of the creation of easements to a devise of land as well as to a transfer *inter vivos.* As there used, the word "transfer" should be given a general rather than a technical meaning.

ID.—INTENTION TO CONVEY EASEMENT.—The general rule is that the doctrine of implied easements is not limited to cases of direct conveyance by deed of the common owner, but applies also to property devised by will to different parties. The intention, in view of all of the circumstances, is the cardinal subject for inquiry.

ID.—UNITY OF TITLE—EXTINGUISHMENT OF EASEMENT.—In order that unity of title to two estates should extinguish an existing easement, the ownership of the two estates should be coextensive, equal in validity, quality, and all other characteristics.

ID.—LANDLORD AND TENANT — VOID ATTORNMENT TO STRANGER.—The attornment of a tenant to a stranger, made without the knowledge of the landlord, is void.

ID.—TENANT'S USE OF WATER AFTER VOID ATTORNMENT—ADVERSE POS-SESSION—STATUTE OF LIMITATIONS.—The use and possession of the water by a tenant of the owner of the dominant estate, after an attornment by such tenant to the owner of the servient estate which was void because made without the knowledge of the landlord, was the use and possession of the landlord, and the statute of limitations did not begin to run against the right of the owner of the dominant estate until the physical assertion of an adverse right by the owner of the servient estate.

ID.—DAMAGE RESULTING FROM CUTTING OFF WATER—DEPRECIATION OF RENTAL VALUE—AMOUNT RECOVERABLE—PLEADING.—In such action, damages due to the depreciation in the rental value of the dominant estate, although in excess of the amount specifically alleged in the complaint as having been suffered in that connection, may be

awarded under the prayer for general damages and relief, so as to cover the damage accruing during the period between the filing of the complaint and the judgment.

ID.—MEASURE OF DAMAGES—REDUCTION OF RENTAL VALUE.—The damage resulting from cutting off the plaintiff's water supply is properly measured by the reduction in the rental value of the dominant estate, where the evidence shows that the diminution in the amount of available water was the sole reason for the reduction of the rent.

ID.—EVIDENCE—ATTEMPT TO VARY WRITING—UNDISCLOSED PURPOSE OF QUESTION.—It is not error to sustain an objection to a question, apparently intended to add some oral terms to a written document, notwithstanding the evidence may have been admissible for a purpose which appeared neither in the form of the question nor in the argument of counsel at the time.

ID.—EXPENDITURES IN EFFORT TO PROCURE ANOTHER WATER SUPPLY.— Expenditures made by the owner of the dominant estate in an effort to procure another water supply are not proper elements of damages in such action, and the failure of the court to find on averments of the complaint in that connection is immaterial.

APPEALS from a judgment of the Superior Court of Marin County, and from an order refusing a new trial. Edgar T. Zook, Judge.

The facts are stated in the opinion of the court.

Martinelli & Greer, for Plaintiff, Appellant in No. 6969, and Respondent in No. 7075.

Edward C. Harrison, Maurice E. Harrison, and William B. Kollmyer, for Defendants, Appellants in No. 7075, and Respondents in No. 6969.

MELVIN, J.—Plaintiff sued for an injunction to prevent defendants from interfering with the asserted easement to have a certain supply of water flow from the lands of defendants to and upon plaintiff's property, and for damages for the cutting of water-pipes by defendant, Julia C. Bodkin. Judgment was given in favor of plaintiff. From said judgment, and from an order denying their motion for a new trial, certain of the defendants appeal and the plaintiff being dissatisfied with the amount of damages awarded appeals from that part of the judgment.

The litigation grew out of a controversy over the right to the use of part of the water flowing from certain springs on a tract of land in Marin County known as the Molinari ranch. Plaintiff owns an adjoining place called the Frank Foster ranch and claims the right to use the demanded water for domestic and other purposes thereon. Maria L. Velasco in her lifetime owned both ranches and much other real property in the same immediate neighborhood. The Molinari ranch is on the highest ground. Below it on the same watershed are the dairy ranch and the home ranch, so-called, and adjoining the Molinari ranch, but on a different watershed, is the Frank Foster ranch. Mrs. Velasco built dams to impound the waters of certain springs and laid pipes to convey water from the dams to the Molinari ranch-house, to the dairy ranch and to the buildings on the home ranch. She permitted Meyer, a tenant of the Frank Foster ranch, to lay a pipe from the buildings on the Molinari ranch to the Foster ranch. The topography and the location of the pipes was such that the Foster ranch received water only when the other users had closed their pipes so that sufficient water would back up in the main pipe and so flow over to the property occupied by Meyer, and later by his successors. Foster was a tenant of the property that is now known by his name at the time of Mrs. Velasco's death, and was using the water for household and other purposes. By Mrs. Velasco's will the Frank Foster ranch was devised to her granddaughter, Frances O. Pacheco, and the rest of her property was devised and in the probate proceedings was duly distributed to four sons and daughters as tenants in common. Subsequently in a partition suit to which Frances O. Pacheco was not a party, this land was so divided that Juan Pacheco, the father of Frances O. Pacheco and the husband of Julia C. Pacheco (afterward Julia C. Bodkin), took the Molinari ranch and Catalina C. Valencia took the dairy and home ranches. Gumesindo Pacheco and A. F. Pacheco took other properties. The decree in partition declared the springs on the Molinari ranch to be the property of the four parties in common, each owning an undivided one-fourth interest. A. F. Pacheco never used any of the water, but Gumesindo Pacheco built a pipe line from the main pipe on the Molinari ranch to his property. The use of the water from that time, and for many years prior to 1906, may be best described in the words of

the opinion filed by the learned judge of the superior court
who presided at the trial of the case:

: ''The home ranch, belonging to Mrs. Valencia, being at the
lowest level, always received water; the dairy ranch, the
Molinari ranch and the Pacheco ranch at successive heights
above the home ranch received water when the same was not
entirely used by those living at the home ranch. The Frank
Foster ranch, being at the highest level of all, received water
only at such times as the same was not being used by any
of the others.''

After the death of Juan Pacheco the Molinari ranch was
distributed, in 1901, one-half to his widow (afterward Julia
C. Bodkin), and the other half to his daughter, Frances O.
Pacheco, and in 1903 Mrs. Bodkin conveyed all of her interest
in the ranch to her daughter, said Frances O. Pacheco, who,
from that time until early in 1905, owned both the Molinari
and the Frank Foster ranches. She then sold the Molinari
ranch to Mrs. Julia C. Bodkin, her mother, who has owned
it ever since. Early in 1906 Frances O. Pacheco (who had
become Frances O. Laydon) sold the Foster place to Mr.
Tognazini, who was acting for himself, the plaintiff herein
and others, and thereafter Mr. Cheda acquired title to the
entire Frank Foster ranch. During the ownership of Frances
O. Pacheco-Laydon the water was used on the Frank Foster
ranch as it had been for many years theretofore. When Mrs.
Laydon conveyed the property to Mr. Tognazini the place was
leased to Frank Tanforan, her mother's brother. The term
of the lease continued until September 26, 1909. A sub-
lessee, Avilla by name, used the property as a dairy ranch.
Early in April, 1906, Mrs. Bodkin, who had desired to pur-
chase the Foster ranch and was very angry when it was sold
to other persons, wrote to her brother, Mr. Tanforan, the
tenant, informing him that the privilege of taking water
from the Molinari ranch would be withdrawn on April 15th.
This letter was exhibited to Mr. Tognazini, who at once con-
sulted with Mr. Cheda. True to her threat Mrs. Bodkin, on
April 15, 1906, in the presence of her husband and her brother,
caused the pipe leading to the Foster place to be disconnected,
and it so remained for two or three weeks. During that
time, however, Avilla, the subtenant, acting under the per-
mission of Tanforan, connected the pipe on two or three occa-
sions long enough to fill his tank. For further narrative of

the facts we again quote from the opinion of the learned
judge of the superior court:

"On or about the 28th day of April, 1906, Mrs. Bodkin
and Tanforan entered into an agreement whereby Mrs. Bod-
kin agreed to permit Tanforan to use the water on the ranch
during such time as he might remain as tenant for the sum
of twenty dollars per month rental. In September, 1909,
Tanforan's lease expired, and on the 26th of that month, the
defendant Julia C. Bodkin finally cut off the water and tore
up part of the pipe line to the Frank Foster ranch. Since
that time no water has been received by plaintiff.

"Plaintiff testified that some time in 1906, he learned that
the flow of the water had been interfered with in some way,
but as at the time he acquired this information the water was
then being received at the ranch, he paid no further attention
to it. He further testified positively that he had no knowl-
edge that Tanforan was paying Mrs. Bodkin for the use of the
water until some time in October, 1909.

"While the witness Tanforan contradicts the plaintiff in
this regard and states that at some time after the cutting
he informed plaintiff that he was paying for the water, Tan-
foran nowhere fixed the time when he gave such notice to
plaintiff, and it is decidedly improbable, considering that
Tanforan never claimed any reimbursement for the payments
which he made to Mrs. Bodkin, that such could be the fact.
It is further to be noted that Tanforan admits that he was
present at the cutting of the pipes as a witness for his sister
should there ever be a lawsuit over the water rights. . . .

"In view of this admission, it is inconceivable that Tan-
foran would have put plaintiff on his guard by notifying him
of his agreement with Mrs. Bodkin. The Court therefore
finds that plaintiff had no actual knowledge that Tanforan
was paying for the water until 1909."

Appellants assert that their demurrers should have been
sustained because the second amended complaint fails to state
a cause of action. It is conceded that a pleading of the ulti-
mate fact of plaintiff's ownership of the water right might
have been sufficient, but it is the theory of appellants that
he has chosen to aver probative facts which do not support
the conclusion which he seeks as to the ultimate fact of own-
ership. The appellant, in other words, invokes the rule an-
nounced in such cases as *Kidwell* v. *Ketler,* 146 Cal. 12–17,

[79 Pac. 514], that where a pleader sets forth his chain of title and upon that chain pleads ownership, the allegation of ownership becomes a mere conclusion of law. Undoubtedly that is the general rule. Appellants insist that the allegation that on March 8, 1905, Frances O. Laydon was the owner of both properties which, as plaintiff asserts, occupied the relation of dominant and servient tenements, suffices to negative the existence of any easement because (so the argument runs) Mrs. Laydon's ownership of both ranches destroyed the servitude. (Citing sections 805, 811, of the Civil Code, and *Dixon* v. *Schermeier,* 110 Cal. 582, [42 Pac. 1091].) Further, say appellants, the plaintiff's right, if any he have, must be found in the *quasi* easement at the time of the grant of Laydon to Bodkin which severed the *quasi* dominant and *quasi* servient tenements, and upon the reservation of the easement, not expressed in the deed, but implied from its alleged necessity. The complaint contains an allegation that the flow of water from the Molinari ranch to the Foster ranch was "necessary for the full enjoyment, use and benefit of said Frank Foster Ranch," and appellants cite numerous authorities to the effect that this is not a sufficient pleading of strict necessity. These citations include *Kripp* v. *Curtis,* 71 Cal. 62–65, [11 Pac. 879]; *Corea* v. *Higuera,* 153 Cal. 451, [17 L. R. A. (N. S.) 1018, 95 Pac. 882]; *Cassin* v. *Cole,* 153 Cal. 677, [96 Pac. 277], and *Bully Hill etc. Co.* v. *Bruson,* 4 Cal. App. 180, [87 Pac. 237]. The cases cited do not support the contention of appellants. The authorities refer to rights of way of necessity, but respondent was not seeking to have the court decide that a right of way of necessity existed. The plaintiff's pleading was to the effect that at the time of the severance of the ownership of the two ranches by the deed of Mrs. Laydon to her mother there was an open and notorious use of the water which was appurtenant to the Foster ranch and a burden upon the Molinari ranch. The complaint is sufficient under the rule expressed by Mr. Justice Henshaw in delivering the opinion of this court in *Jersey Farm Co.* v. *Atlanta Realty Co.,* 164 Cal. 415, [129 Pac. 594], as follows: "By section 1104 it declared generally that in the case of a transfer of real property other easements may spring into existence, easements which could not be enumerated for the very reason that they embrace every burden which by virtue of the manner of use has been imposed upon

the portion of the estate not granted in favor of the portion granted. It is a direct recognition of the principle long established and fully recognized by this court (*Cave* v. *Crafts*, 53 Cal. 135; *Quinlan* v. *Noble*, 75 Cal. 250, [17 Pac. 69]), that principle being that 'where the owner of two tenements sells one of them, or the owner of the entire estate sells a portion of it, the purchaser takes the tenement or portion sold with all the benefits and with all the burdens that appear at the time of the sale to belong to it as between it and the property which the vendor retains.' " It is to be remembered that when the two ranches were in one ownership the Foster ranch was occupied by a tenant who had the use of the water conducted from the Molinari place. Where the owner of one heritage consisting of several parts has so adapted them that one derives a benefit from the other, when he sells one of them without making mention of the incidental burdens of one in respect to the other, an implied understanding arises that the burdens and correlative advantages shall continue as before the separation of the title. (*Powers* v. *Heffernan*, 233 Ill. 597, [122 Am. St. Rep. 199, 16 L. R. A. (N. S.) 523, 84 N. E. 661].) The same principle is stated in *Denton* v. *Leddell*, 23 N. J. Eq. 64. (See, also, the authorities cited in the notes to *Rollo* v. *Nelson*, 26 L. R. A. (N. S.) 315.) We are convinced, therefore, that even upon appellant's theory the complaint was sufficient and the court did not err in overruling the demurrer. But we do not agree with appellant's view in relation to the plaintiff's allegation of ownership of the easement as being a mere conclusion from a plea of the chain of title. This allegation stood by itself and was denied by the answer. The case was tried on the theory, not that the easement was reserved by implication when Mrs. Laydon executed the deed of the Molinari ranch to her mother, but upon the theory that plaintiff's easement was created by the devise of Maria L. Velasco. At first the court had excluded evidence regarding the user of the premises during Mrs. Valesco's life. Subsequently the case was reopened, after submission, the court declaring that since Frances O. Pacheco owned the Molinari ranch with the appurtenant water right, however, in common with others and owned the whole fee of the Frank Foster ranch with all of its appurtenances, there could have been neither creation nor merger of the elements of an easement—that plaintiff's rights, if any, must have had

their inception in the decree of distribution of the estate of
Maria L. Velasco.  Thereafter evidence was introduced in
accordance with this ruling.  Such evidence was admissible
under the general allegation and traverse of the ultimate fact
that plaintiff owned an easement to take water from the
Molinari ranch.  This was the issue tried, and even if it be
conceded that the creation of the easement was alleged in one
way and proven in another, appellants were not misled, be-
cause the purpose of the court in reopening the case was very
plainly stated.  (Code Civ. Proc., sec. 469.)  This disposes
of the objection that the court erred in neglecting to find
upon the averment, denied by the answer, that Mrs. Laydon
was the owner of the Molinari ranch prior to March 8, 1905,
and that on that day she conveyed title to her mother.

Appellants also contend that the court erred in failing to
find upon the issue of necessity for the use of the water on
the Foster ranch.  The complaint alleged and the answer
denied this necessity, and we are referred to testimony tend-
ing to establish the fact that the Foster place was successfully
operated before the installation of the pipes and after their
removal.  Respondent's reply, which seems to be a complete
one, is that if the court was correct in overruling the demurrer
to the second amended complaint, it must follow that strict
necessity for the use of the water is not a material issue.

Appellants insist that while a *transfer* of real property
passes all easements attached thereto (Civ. Code, sec. 1104),
the word ''transfer'' as used in said section must be given
a technical meaning as applying only to living persons (Civ.
Code, sec. 1039), and that unless it clearly appeared from
the will of Mrs. Velasco that she intended to convey a less
estate, the devise in her will must be interpreted as abolishing
rather than perpetuating the right of her devisee of the
Frank Foster ranch to continue the taking of water from the
Molinari ranch.  (Civ. Code, sec. 1311.)  We are of the
opinion, however, that *quasi* easements which a testator has
apportioned to various tracts during his or her lifetime, ripen
into easements in favor of or burdens upon such parcels of
land at their severance under the terms of such testator's
will.  There is no good reason why a difference should be
made between a ''transfer'' *inter vivos* and a ''devise'' of
land in the matter of the creation of easements, and we are
constrained to hold that the word ''transfer'' as used in

section 1104 of the Civil Code was employed in the general rather than the technical sense. In *Jones* v. *Sanders,* 138 Cal. 405, [71 Pac. 506], the court was considering an easement for a sewer over a certain lot in San Francisco. The lot upon which the dwelling served by the sewer as well as those traversed by it were originally owned by Mr. Cook. In the course of the opinion the following language was used: "When Mr. Cook constructed the sewer, being then the owner of all three of the lots, he had a *quasi* easement on the other two lots for the benefit of the residence lot, on which was the head of the sewer, and when it was severed from the other two by the devise of them to Mrs. Martin she took with the burden imposed upon them by her devisor, and an easement in them for the benefit of the lot upon which was the dwelling-house was thereby created, and when the stable lot was sold to Magee, and by him to the plaintiff, both of the Pine-Street lots had an easement in the Jones-Street lot now owned by defendant." Appellants say that this is *dictum* because the suit was founded upon an easement expressly described and granted by the deed of one of Mrs. Martin's grantees. Nevertheless it is a correct statement of the law. The general rule is that the doctrine of implied easements is not limited to cases of direct conveyance by deed of the common owner, but applies also to property devised by will to different parties. The intention, in view of all of the circumstances, is the cardinal subject for inquiry. (9 Ruling Case Law, sec. 24, p. 759.) In *Gorton-Pew Fisheries Co.* v. *Tolman,* 210 Mass. 402, [38 L. R. A. (N. S.) 882, 97 N. E. 54], it was held that a right of way, used by a testator in his lifetime over property which was devised to his sons, passed as an appurtenance to other land which his wife took by will. (See, also, *Stanford* v. *Lyon,* 37 N. J. L. 426, [18 Am. Rep. 736] ; *Scott* v. *Moore,* 98 Va. 668, [81 Am. St. Rep. 749, 37 S. E. 342] ; *Estate of Thomas,* 147 Cal. 236, [81 Pac. 539] ; *Phillips* v. *Phillips,* 48 Pa. St. 178, [86 Am. Dec. 577] ; *Stephens* v. *Boyd,* 157 Iowa, 570, [138 N. W. 389].)

That there was in reality no merger of the tenements constituting the easement when Mrs. Frances O. Pacheco-Laydon owned both ranches was correctly decided by the lower court. She held her water rights in the Molinari tract in common with others. There was, therefore, no merger because, in order that such a result may ensue, there must be a unity

of estates in all respects. (14 Cyc. 1189.) In order that unity of title to two estates should extinguish an existing easement the ownership of the two estates should be coextensive, equal in validity, quality, and all other characteristics. (*Dority* v. *Dunning,* 78 Me. 381–387, [6 Atl. 6].)

Appellants showed that the pipe leading to the Foster ranch had been cut in 1906, and inasmuch as some of the parties in interest were not brought into the case until more than five years later when the second amended complaint was filed, they invoke the provisions of section 318 of the Code of Civil Procedure as a bar to the action. But the cutting of the pipe in 1906 only produced a temporary stoppage of the water. The service was thereafter resumed on apparently the same terms as those previously existing. Tanforan's attornment to Mrs. Bodkin was void because plaintiff had no knowledge thereof. (Civ. Code, sec. 1948.) His possession and use of the water after the resetting of the pipe during the three years following the first cutting was, as a matter of law, that of the plaintiff. The statute did not begin to run, therefore, until the physical assertion of an adverse right by the cutting of the pipe in 1909. (*Thompson* v. *Pioche,* 44 Cal. 508, [24 Cyc. 955].)

It is contended that the judgment for damages is not sustained by the finding on that subject, and that the finding is supported by neither evidence nor pleading. The original complaint filed in 1910 alleged, as did the second amended complaint, damage in the sum of one thousand five hundred dollars, due to depreciation in the rental value of the property. The court found that the rental value of the ranch was two thousand one hundred dollars a year, and that plaintiff sustained damage, to June 24, 1912, the date of the trial, in the sum of $2,630. It is contended that the court could not give judgment for a greater amount than the plaintiff prayed for. The answer to this argument is that while there was a general allegation of depreciation of rental value in the sum of one thousand five hundred dollars, this allegation did not cover the period between the filing of the complaint and the judgment. The prayer of the complaint was for a very large sum by way of damages, and there was a further prayer for general relief. Under these circumstances, the court was not restricted to the sum of one thousand five hundred dollars as the highest possible award under the pleadings.

Plaintiff testified that on the 26th of September, 1909, the date when the pipe was cut, the Frank Foster ranch was yielding a yearly rental of two thousand one hundred dollars. As a result of cutting off the water supply the property yielded no rent during the last three months of 1909 and January, 1910. After that plaintiff was obliged, he said, by reason of his inability to develop adequate water supply to reduce the rental from two thousand one hundred dollars to one thousand three hundred dollars per annum. The judgment was, therefore, based upon the total loss of rent for four months, seven hundred dollars, plus $1,930, the loss at eight hundred dollars per year from February 1, 1910, to the date of the trial, June 24, 1912, or in round numbers twenty-nine months, amounting to $1,930. The objection is made that this part of the finding and judgment was based upon plaintiff's testimony alone, and that he did not testify regarding rental values, but merely that he had the place rented for two thousand one hundred dollars when the pipe was cut; that his tenant would not accept the ranch without a water supply, and that he reduced the rent to one thousand three hundred dollars a year. This is surely some evidence of the change in the rental value due to the taking away of the supply of water, particularly as Mr. Cheda had testified that he was well acquainted with the values of properties involved in this litigation, and as a banker had loaned money on some of the land as security. Defendants object to the measure of damages applied by the court, insisting that not the difference in rental value of the land is the criterion, but the value of the use of the water right during the time of its interruption. (Civ. Code, sec. 3334.) It seems clear, however, that the two measures of damages are identical, as the diminution in the amount of available water was the sole reason for the reduction of the rent.

Appellants say that the easement was changed after the death of Mrs. Velasco, and that respondent is not entitled to the increased amount of water due to these changes. It appears that the main pipe was one and one-quarter inches in diameter and that at the time of Mrs. Velasco's death this was tapped by a three-quarter inch pipe through which water flowed to a pipe one inch in diameter leading to the Frank Foster ranch. After Mrs. Velasco's death Juan Pacheco changed conditions so that the one-inch pipe leading to the

Foster place was joined to the main or one and one-quarter inch pipe. After Mrs. Velasco's death, but before distribution of her estate, a second reservoir was built on the Molinari ranch, and the funds of the estate were drawn upon to pay for it. This was also connected with the one and one-quarter inch pipe, but as Gumesindo Pacheco's ranch was added to those taking water from the Molinari ranch, it does not appear that the new arrangement added to the volume of water available to the tenant of the Foster ranch. We cannot say, therefore, that the award to plaintiff should be disturbed because of these physical changes in reservoirs and in piping.

We see no merit in the contention that the judgment must be set aside because it is too indefinite and uncertain. The use which occupants of plaintiff's property had made of the surplus flow depended upon the seasons and upon the depletions caused by the necessities of those who were prior to plaintiff in right to draw from the reservoirs. The judgment defines the respective rights of the parties as accurately as the circumstances will permit.

The court excluded certain testimony of Frank Tanforan. The witness had stated that he leased the Foster place from October 1, 1903, for six years, but sublet for the whole term to Mr. Avilla. He was then asked what, if any, consideration in addition to that recited in the lease was furnished by him to Mr. Avilla, and the court sustained an objection on the ground that the evidence sought would vary by oral statement the terms of a written instrument. This ruling was perfectly proper. It is now asserted that Mr. Tanforan's testimony was offered for the purpose of enlightening the court as to the rental value of the premises, but that purpose appeared neither in the form of the question nor in the argument of counsel at the time. The ruling was based upon the form of the question which was apparently intended to add some oral terms to a written document.

Appellants also complain of the exclusion of certain testimony of Mr. Thomas P. Bodkin relative to a conversation between his wife and plaintiff's brother, held by means of the telephone. Mr. V. J. B. Cheda and Mrs. Bodkin agreed that there had been such a conversation, but he denied while she asserted that the water was mentioned. It was sought by counsel for defendants to corroborate her testimony on this point by that of her husband. If this was error it was not material

because, taking Mrs. Bodkin's statement of her conversation with plaintiff's brother and associate as absolutely true, her mere verbal declaration would have no weight against the eloquent and undenied fact that for three years thereafter the water was supplied to Tanforan's subtenant. The important matter and the question for the court was not whether she verbally declared herself entitled to the water, but whether or not the plaintiff Silvio H. Cheda knew of the agreement of Frank Tanforan to pay rent for the water.

We now turn to plaintiff's appeal which is based upon the contention that in addition to the award made in his favor he should have been recompensed for the cost of searching for and developing water on the Foster ranch, $2,268.86, and $725 for operating a pumping plant thereon for twenty-nine months at $25 a month. It is true that plaintiff alleged such elements of damage and that the averment was denied by the answer, but it does not follow that the court erred in failing to find upon this issue. While there was proof of the expenditures alleged, there was no showing that the improvements varied the difference in the value of the land with and without the water or the difference in the rental value. We do not see how such expenditures made in an effort to procure another water supply are proper elements of damage. Therefore the court's failure to find upon this matter was not an injury of which plaintiff may complain.

It follows that the judgment must be affirmed in all respects, and as to all the appellants, and the order denying the motion of certain defendants for a new trial must also be affirmed. It is so ordered.

Lorigan, J., and Henshaw, J., concurred.

Hearing in Bank denied.